## Edward J. Flynn v. City of Springfield.

1. PENAL ACTION—*when may not be dismissed.* The city council cannot by an order necessarily obtain the dismissal of a penal action brought in its name for the violation of its ordinance.

2. CITY ATTORNEY—*duty of.* In suits concerning the city regarded as an individual, the city attorney is required to follow the direction of the city council, but in all matters that merely concern the public, which are for the preservation of morals, the maintenance of good order, the abatement of public nuisances, the destruction of dens of vice and infamy, he is wholly independent of the city council, is a servant of the people, and as to such matters, vested with powers and burdened with duties over which the council have no jurisdiction.

3. ORDINANCE—*how question of reasonableness of, determined.* The question as to whether an ordinance is reasonable is one of law for the court.

4. GAMBLING ORDINANCE—*when not unreasonable.* Such an ordinance which provides that one "found" in a gambling resort is guilty of a violation thereof, is not unreasonable.

Action of debt for penalty. Appeal from the Circuit Court of Sangamon County; the Hon. JAMES A. CREIGHTON, Judge, presiding. Heard in this court at the November term, 1904. Affirmed. Opinion filed April 20, 1905.

JAMES A. CONNOLLY and DAVIS McKEOWN, for appellant.

ARTHUR M. FITZGERALD, for appellee.

MR. JUSTICE GEST delivered the opinion of the court.

The city attorney of the city of Springfield brought this suit in the name of the city against the appellant, Flynn, for the recovery of penalties for the violation of certain ordinances of the city. The declaration is in debt and consists of twenty-six counts. Each of the first thirteen counts sets up the following section of an ordinance :

"652. INMATES OF GAMING HOUSE. Whoever shall be an inmate of any gaming house or room, within said city, or shall be in any way connected therewith, or shall frequent or visit the same or be found therein; or whoever shall, within the city, play for any money or other valuable thing at any game with cards, dice, billards, or any other instrument or device whatsoever; or whoever shall

bet on any such game when played by others, shall, on conviction, be fined not less than ten dollars nor more than one hundred dollars for each offense."

And each of the remaining thirteen counts sets up the following ordinance:

"651. GAMBLING HOUSE OR ROOMS. Whoever shall, within the city of Springfield, set up, keep, maintain or support any gambling house or room, or place used for the practice of gaming or playing for money or property, or shall knowingly permit any building or premises owned or controlled by him to be used for any such purpose, or whoever shall keep or use, or permit to be used, in any building or place occupied, controlled or owned, by such person, any keno or faro table, wheel of fortune, roulette, shuffle board, cards, or other instrument or device, commonly used for the purpose of gaming, shall, upon conviction, be fined not less than twenty-five dollars nor more than two hundred dollars for each offense."

Defendant pleaded the general issue, a trial was had by jury and a verdict rendered finding the issues for the plaintiff upon the first thirteen counts, and fixing the amount of the finding at $50, on each count, in all the sum of $650, and the court after overruling a motion for new trial entered judgment for the plaintiff for that sum.

There are but two questions presented to us by the argument of counsel for appellant: first, did the court err in refusing to dismiss the suit, and second, is the verdict justified by the law and the evidence. It appears that Mr. Salzenstein, claiming to be corporation counsel, appeared in the Circuit Court and moved to dismiss the suit and in support of the motion offered the following:

"Ordered by the City Council of the City of Springfield: That the City Attorney is hereby instructed to discontinue action in cases brought in the name of the City in the Circuit Court for violations of ordinances for the following reasons:

First, he was not instructed by this council nor any officer of the city so to do;

Second, for the reason that the grand jury was in session

at the time the præcipe in those cases were filed and true bills were found;

Third, if for any reason he shall refuse, the Mayor is hereby instructed to order the Corporation Counsel to dismiss the said cases for the city.

Passed by the City Council of the City of Springfield, Ill., November 2, 1903.

C. F. MORROW, City Clerk."

And also the following:

"SPRINGFIELD, ILL., Nov. 4, 1903.

ALBERT SALZENSTEIN, ESQ., Corporation Counsel of the City of Springfield, Ill.

DEAR SIR: You are hereby notified that I have directed the City Clerk to transmit to you a certified copy of an order passed by the City Council, Monday evening, November 2, directing the City Attorney to dismiss certain suits brought in the name of the City of Springfield, and pending in the Circuit Court of Sangamon County, Illinois, specified in said order, upon my requesting him to do so, and upon his failure or refusal to dismiss said suits, that I request and direct you as Corporation Counsel to dismiss said suits. I further notify you that I have requested Arthur M. Fitzgerald, City Attorney of the City of Springfield, Illinois, to dismiss the suits specified in said order and he has refused so to do. I therefore request and direct you to dismiss said suits.

Yours very truly,

HARRY H. DEVEREAUX, Mayor."

The motion was contested by city attorney Fitzgerald and was overruled by the court. Afterward the defendant entered his motion to dismiss the suit, based upon the same proceedings and action of the city council and the mayor, and his motion was overruled. It is argued by the appellant that this is a mere civil suit for the recovery of a debt, that a plaintiff may dismiss his suit when he please whether his attorney approve it or not, and that the city attorney was bound to follow the direction of the city council "just as any other attorneys are subject to the direction of their

clients in that respect." The argument is based upon an entire misapprehension of the nature of this proceeding. It is not a mere civil suit. While it is civil in form, it is such only in form. It partakes largely of the criminal nature. The ordinances were not passed with the view of creating the relation of debtor and creditor. Violation of the ordinance established no contractual relation. No such relation was created or could be created thereby. The violator becomes subject to a penalty for the offense he has committed. By long established practice all such penalties are recoverable by action of debt. The plaintiff in an ordinary civil suit is entitled to recover if the evidence merely preponderates in his favor. In suits for the recovery of penalties the plaintiff is not entitled to recover upon a mere preponderance of the evidence; to authorize recovery in such case there must be a clear preponderance in favor of plaintiff. The appellant asked and the court gave in his behalf an instruction stating the law so to be. Such suits more nearly resemble criminal proceedings than civil, in all their essential elements. In an ordinary civil suit by a city, judgment may be rendered for costs against the city just as against plaintiff in any case brought by an individual, but in all suits brought for violation of ordinances such as here in question, no judgment for costs may be rendered against the city when the issue is found against the city. The reason for the difference is manifest. In the one case the city assumes the position of an individual seeking the enforcement of a personal right. In the other, it is simply a public agency for the preservation of good order, for the enforcement of *quasi* criminal provisions of law. The proceeding being of the nature above mentioned, was the city attorney bound to obey the orders of the city council and dismiss the suit? We think not. The relation existing between the city attorney and the city council is not that of client and attorney. The city attorney becomes such in pursuance of law, he is elected by the people, his powers and duties are determined and defined by law; he is the law officer of the city, but he is not the mere servant of the city council. In suits that concern the city regarded as

an individual, the city attorney is required to follow the direction of the city council; but in all matters that merely concern the public, which are for the preservation of morals, and maintenance of good order, the abatement of public nuisances, the destruction of dens of vice and infamy, he is wholly independent of the city council, is a servant of the people, and as to such matters, vested with powers and burdened with duties over which the council have no jurisdiction.

In support of his proposition that the verdict is against the law and the evidence, it is urged by appellant that said section 652 is unreasonable and therefore void. Whether or not it be unreasonable is a question of law for the court, not of fact for the jury. Under section 652 defendant was charged with being an inmate of a gaming house or connected therewith or with being a frequenter or visitor thereof or found therein. Appellant argues: "The ordinance presumes that every one found in a gambling house is guilty of at least encouraging and abetting the game going on there," and that therefore the ordinance is unreasonable. He further says: "If section 652 be limited to those who visit, frequent or are found there for the purpose of gaming or to aid, abet or encourage others to gamble," then the section is not unreasonable. And again it is argued: "There is no evidence that he was in any manner aiding, assisting or abetting either the gaming or the keeping of the gambling house." Gaming and gaming houses are both prohibited by statute. A gaming house is an unlawful place. It is contrary to law that such a place should exist. No citizen has the right to maintain or assist in maintaining such a place. The argument of appellant summarized is simply this: that it is not and cannot be an offense for a citizen to visit, frequent or be found in a gaming house unless he be found there actually gaming or assisting in the gaming or in the keeping of the gaming place. To illustrate the unreasonableness of the ordinance it is argued: "The physician who goes in to visit one suddenly taken ill is guilty; the Salvation Army girl who goes in to solicit charity is guilty; the street preacher who goes

Flynn v. City of Springfield.

in to labor for the conversion of the inmates is guilty." The law-abiding physician who might perhaps be called into a gambling place to visit one suddenly taken ill is not " found " there; it is a possible thing that he should be brought there for that purpose but he is neither a frequenter nor visitor nor person " found " there. It may be that the gambling houses of Springfield are so openly conducted that the Salvation Army and the street preachers carry on their work there, but, if so, it is somewhat out of the ordinary. It is not matter of general knowledge that divine services are ever conducted at such places. As we have been led to believe, gambling places are usually at least conducted under lock and key and none but the initiated are admitted. The officers of the law sometimes get in such places but they are not found there. They sometimes find others there. The natural, reasonable and legitimate inference to be drawn from the fact that a person is found in a gambling place is that he is there to gamble and to encourage, aid and assist in the maintenance of the place. We conclude that the ordinance is not obnoxious to the objection that it is unreasonable.

As to the point that the evidence does not sustain the verdict, it clearly and satisfactorily appears from the record that at the several times mentioned in the first thirteen counts "Lane's Place" at No. 415 Washington street, was a gambling house in full operation. The evidence also clearly shows that defendant was a visitor there and found there at those several times, and that he was not there for any legitimate purpose; that he and scores of other persons were by their presence aiding and abetting, assisting and encouraging the maintenance of the place; that he was not there by mistake. One visit by mistake, if such a thing were possible, would have informed him of the character of the place. He continued his visits day after day after he discovered his mistake, if any, he made. The ordinance is not unreasonable, the verdict of the jury is fully sustained by the evidence, there was no error in the trial of the cause, the judgment of the court is right and will be affirmed.

*Affirmed.*