(Nos. 68141, 68164 cons.—

THE PEOPLE OF THE STATE OF ILLINOIS *ex rel.*
RICHARD M. DALEY, Appellee, v. DATACOM
SYSTEMS CORPORATION *et al.*, Appellants.

*Opinion filed October 17, 1991.—Rehearing
denied February 3, 1992.*

2

6

BILANDIC, HEIPLE and FREEMAN, JJ., took no part.

Baker & McKenzie, of Chicago (Francis D. Morrissey, Thomas F. Bridgman, William Lynch Schaller and Jane M. McFetridge, of counsel), for appellant Datacom Systems Corporation.

Judson H. Miner and Kelly R. Welsh, Corporation Counsel, of Chicago (Ruth M. Moscovitch and Lynn K. Mitchell, of counsel), for appellant City of Chicago.

Cecil A. Partee, State's Attorney, and Mercer Cook, Deputy State's Attorney, of Chicago (Allen Reiffman, Raquel G. Martinez, Shauna L. Boliker Andrews and David R. Butzen, Assistant State's Attorneys, of counsel), for the People.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and William H. London, Assistant Attorney General, of Chicago, of counsel), for appellee Department of Registration and Education *et al.*

JUSTICE CUNNINGHAM delivered the opinion of the court:

According to an interim report by the Traffic Court Task Force, issued on January 31, 1985, to the Special Commission on the Administration of Justice in Cook County, the City of Chicago (City) had approximately 34 million unpaid parking tickets pending in its traffic court. One day prior to the issuance of this report, the City entered into a contract with Datacom Systems Corporation (Datacom), a New York corporation, in which Datacom agreed to evaluate the City's parking management system and collect the monies due on the delinquent parking tickets.

On February 26, 1986, the Cook County State's Attorney, on behalf of the People of the State of Illinois (State), filed a four-count complaint in the circuit court of Cook County against the City and Datacom, alleging the actions of Datacom concerning collection of the parking tickets violated the Collection Agency Act (Ill. Rev. Stat. 1985, ch. 111, par. 2001 *et seq.*), the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (Ill. Rev. Stat. 1985, ch. 121½, par. 261 *et seq.*), and the Uniform Deceptive Trade Practices Act (Deceptive Trade Practices Act) (Ill. Rev. Stat. 1985, ch. 121½, par. 311 *et seq.*). The State also set forth allegations in *quo warranto* (Ill. Rev. Stat. 1985, ch. 110, par. 18—101 *et seq.*) purporting to show that both the City and Datacom exceeded their lawful authority. The City and Datacom filed a joint motion on March 12, 1986, to

dismiss the complaint, claiming the complaint failed to state a cause of action pursuant to section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—615). The circuit court granted the motion and dismissed the cause of action with prejudice on February 9, 1987.

On the same day the State filed its complaint, the Department of Registration and Education (Department) (now the Department of Professional Regulation (Ill. Rev. Stat. 1989, ch. 111, par. 2003)) of the State of Illinois initiated an administrative action against Datacom, contending Datacom violated various provisions of the Collection Agency Act. On March 12, 1986, Datacom filed a motion seeking leave to file a third-party complaint against the Department and requesting declaratory and injunctive relief from the Department's attempt to enforce the Collection Agency Act. The motion was granted the following day. The Department filed a motion to dismiss Datacom's third-party complaint; the circuit court denied the motion on February 9, 1987. The court granted Datacom's request for a permanent injunction barring the Department from suspending or revoking Datacom's licenses or otherwise proceeding against Datacom.

Both the State and the Department appealed. The appellate court reversed and remanded (176 Ill. App. 3d 697), concluding that Datacom was subject to the Collection Agency Act, the Consumer Fraud Act, and the Deceptive Trade Practices Act, and that the State sufficiently stated claims against the City and Datacom in *quo warranto*. The appellate court held that the circuit court erred in dismissing the State's complaint and in permanently enjoining the Department's action against Datacom. (176 Ill. App. 3d at 714.) The appellate court also held that the circuit court should have dismissed Datacom's third-party complaint against the Department.

(176 Ill. App. 3d at 714.) The City and Datacom then filed petitions for leave to appeal with this court, which were allowed and consolidated for the purpose of appeal. (134 Ill. 2d R. 315.) In view of the voluminous record, those facts necessary for the resolution of each issue will be reviewed. We affirm the decision of the appellate court, which reversed and remanded with directions.

## I. Standard of Review

Since the circuit court dismissed all four counts of the State's complaint with prejudice for failure to state a claim upon which relief could be granted pursuant to the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—615), the standard of review is that "all facts properly pleaded in the complaint must be taken as true." (*Fitzgerald v. Chicago Title & Trust Co.* (1978), 72 Ill. 2d 179, 187.) "This court has repeatedly held that a cause of action should not be dismissed on the pleadings unless it clearly appears that no set of facts can be proved which will entitle plaintiffs to recover." *Fitzgerald,* 72 Ill. 2d at 187; *Fechtner v. Lake County Savings & Loan Association* (1977), 66 Ill. 2d 128, 133; *Edgar County Bank & Trust Co. v. Paris Hospital, Inc.* (1974), 57 Ill. 2d 298, 305.

We will then address each issue in light of that standard.

## II. Collection Agency Act

### A. Allegations in the Complaint

In count I, the State alleged that numerous actions on the part of Datacom violated various provisions of the Collection Agency Act, and those unlawful acts also constituted violations of section 2 of the Consumer Fraud Act (Ill. Rev. Stat. 1985, ch. 121½, par. 262). The State set forth the following allegations in count I:

(1) In violation of section 4 of the Collection Agency Act, Datacom unfairly and deceptively continued to engage in debt collection activities prior to obtaining registration in Illinois to do business as a collection agency. Ill. Rev. Stat. 1985, ch. 111, par. 2007.

(2) In violation of sections 9 and 9.12 of the Collection Agency Act, Datacom failed to disclose its business name in the demand notices and envelopes sent to the alleged parking violators. Ill. Rev. Stat. 1985, ch. 111, pars. 2012, 2024.

(3) In violation of sections 9 and 9.13 of the Collection Agency Act, Datacom forwarded to the alleged parking violators demand notices which gave the appearance of being issued by the department of revenue of the City. Ill. Rev. Stat. 1985, ch. 111, pars. 2012, 2025.

(4) In violation of sections 9 and 9.14 of the Collection Agency Act, Datacom forwarded to the alleged parking violators demand notices which contained the City's trademark when the City did not in fact send the notices. Ill. Rev. Stat. 1985, ch. 111, pars. 2012, 2026.

(5) In violation of sections 9 and 9.15 of the Collection Agency Act, Datacom forwarded to the alleged parking violators demand notices which represented that the City's department of revenue sent the notices when in fact Datacom sent the notices. Ill. Rev. Stat. 1985, ch. 111, pars. 2012, 2027.

(6) In violation of sections 9 and 9.17 of the Collection Agency Act, Datacom misrepresented the amounts allegedly owed for violating the City's parking ordinances. Ill. Rev. Stat. 1985, ch. 111, pars. 2012, 2029.

(7) In violation of sections 9 and 9.18 of the Collection Agency Act, Datacom represented it could increase the amounts owed by the alleged parking violators when only a judge of the circuit court of Cook County could increase the amounts. Ill. Rev. Stat. 1985, ch. 111, pars. 2012, 2030.

(8) In violation of sections 9 and 9.20 of the Collection Agency Act, Datacom attempted to collect additional monies in excess of the minimum fines owed by the alleged parking violators. Ill. Rev. Stat. 1985, ch. 111, par. 2031.

(9) Datacom unfairly and deceptively continued to send demand notices to alleged parking violators who either had previously paid their parking fines, or had not violated any parking ordinances, or had already obtained a dismissal of their tickets by the court.

(10) Datacom unfairly and deceptively deposited checks and money orders made payable to the clerk of the circuit court in Datacom's bank accounts without authorization from the clerk.

The State contends in count I that all of the foregoing acts by Datacom also constituted violations of section 2 of the Consumer Fraud Act. Section 2 prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices *** in the conduct of any trade or commerce ***." Ill. Rev. Stat. 1985, ch. 121½, par. 262.

We must decide whether Datacom is subject to the Collection Agency Act. Our decision affects not only the sufficiency of the State's complaint, but also the injunction barring the Department from proceeding administratively against Datacom, and Datacom's third-party complaint against the Department.

## B. Fines as Debts

We must first determine whether a municipal fine is a

debt within the parameters of the Collection Agency Act. However, our reading of the Act reveals that the term "municipal fine" is absent. Since "municipal fine" is absent from the Act, this court must analyze the Act "to ascertain and give effect to the intention of the legislature." (*People v. Wallace* (1920), 291 Ill. 465, 467; *City of Decatur v. American Federation of State, County, and Municipal Employees, Local 268* (1988), 122 Ill. 2d 353, 364.) Where the meaning of a statute is in doubt, the court must strive to discover, ascertain and give effect to that legislative intent. (*Wallace*, 291 Ill. at 467-68.) "The real purpose and intent of the legislature will prevail over the literal import of the words." (*Wallace*, 291 Ill. at 468.) "The intention of the lawmakers is to be gathered from the necessity or reason of the enactment and the meaning of the words enlarged or restricted according to their real intent." (*Wallace*, 291 Ill. at 469.) "All general provisions, terms, phrases and expressions shall be liberally construed in order that the true intent and meaning of the General Assembly may be fully carried out." (Ill. Rev. Stat. 1989, ch. 1, par. 1002.) In determining legislative intent, the court must consider the entire statute as well as the evil to be remedied and the object and purpose to be attained. *City of Decatur*, 122 Ill. 2d at 364.

Datacom contends that the Act should be strictly construed in Datacom's favor, and this court should not read intents or implications into it. (See *Barthel v. Illinois Central Gulf R.R. Co.* (1978), 74 Ill. 2d 213, 220.) Datacom argues further that the Collection Agency Act should be narrowly construed because the Act has specific exceptions regarding what individuals and corporations are subject to it.

As we have indicated, the primary goal in the construction of statutes is to ascertain and give effect to legislative intent. (*City of Decatur*, 122 Ill. 2d at 364;

*People v. Lund* (1943), 382 Ill. 213, 215; *Wallace*, 291 Ill. at 467.) "The rules as to strict or liberal construction are of value only as assisting in finding the real meaning of the statute." (*Lund*, 382 Ill. at 215.) Regardless of the approach used, it is this principle of legislative intent we will use as a guide to resolve the issue before us.

The Collection Agency Act neither defines "debts" nor specifically refers to "fines," municipal or otherwise. Section 3 of the Collection Agency Act defines acts by which individuals or institutions are classified as collection agencies. (Ill. Rev. Stat. 1985, ch. 111, par. 2006.) This section describes five different categories of collection agencies. Each category refers to the amounts owed as "accounts," "bills," "debts," "other indebtedness," or "sums due or asserted to be due." Ill. Rev. Stat. 1985, ch. 111, par. 2006.

In the absence of statutory definitions indicating a different legislative intent, words in a statute are to be given their "ordinary and popularly understood meaning." (*Kozak v. Retirement Board of the Firemen's Annuity & Benefit Fund* (1983), 95 Ill. 2d 211, 215; *Winks v. Board of Education of Normal Community Unit School District No. 5* (1979), 78 Ill. 2d 128, 137.) To ascertain the ordinary and popular meaning of words, this court has in the past used the dictionary as a resource. (*Kozak*, 95 Ill. 2d at 215; *Winks*, 78 Ill. 2d at 137.) Because the Collection Agency Act does not define "debt," "indebtedness," "account," "bill," or "claim," we look to the dictionary for further guidance as to the meaning of these words.

A "debt" is defined in general terms as a specified sum of money owed by one person to another, including the obligation of the debtor to pay, and the right of the creditor to enforce payment. (Black's Law Dictionary 363 (5th ed. 1979).) "Indebtedness" is the "state of being in debt," without regard to the debtor's ability to

pay the debt. (Black's Law Dictionary 691 (5th ed. 1979).) "[I]n a broad sense and in common understanding," the term "indebtedness" may mean "anything that is due and owing." (Black's Law Dictionary 691 (5th ed. 1979).) "Account" includes "any right to payment for goods sold or leased or for services rendered which is not evidenced by an instrument or chattel paper, whether or not it has been earned by performance." (Black's Law Dictionary 17 (5th ed. 1979).) A "bill" is "a general name for any item of indebtedness." (Black's Law Dictionary 149 (5th ed. 1979).) A "claim" is a right to payment or a demand for money or property. Black's Law Dictionary 224 (5th ed. 1979).

All of these definitions are quite broad. We conclude the legislature intended to include any amounts owed from one individual or corporation to another, including municipal fines. Furthermore, this court notes that the Collection Agency Act does not explicitly exclude any type of debt or amount owed from its purview. Although the legislature exempted certain types of *institutions* from the control of the Collection Agency Act, it did not exempt any type of *debt*, thereby indicating an intent to include all types of debts or amounts owed. The legislature's use of a variety of words and phrases to describe an amount owed reflects its intent to have the Collection Agency Act pertain to a wide array of debts. Thus, this court finds that the arguments of the City and Datacom narrowly define the meaning of "debt" within the Act and, as such, we find otherwise.

We also stress that the underlying purpose of the Collection Agency Act is "to make unlawful abusive collection practices." (See *International Bureau of Fraud Control, Ltd. v. Clayton* (1989), 188 Ill. App. 3d 703, 708.) Therefore, the focus of the Act is on the improper collecting practices of collection agencies, not the type of debt owed. Ill. Rev. Stat. 1985, ch. 111, pars. 2004

through 2007; see also Ill. Rev. Stat. 1989, ch. 111, par. 2001a.

The City and Datacom also argue that the Act is limited to commercial debts only. We find otherwise. Of the 21 unlawful collection practices proscribed by the Collection Agency Act, only section 9.20, the section cited by the City and Datacom, specifically refers to commercial transactions. (Ill. Rev. Stat. 1985, ch. 111, pars. 2012 through 2033.) Moreover, section 9.20 merely refers to a particular situation in which an agreement *does* create the debt or claim at issue, or where a commercial transaction *is* involved. (Ill. Rev. Stat. 1985, ch. 111, par. 2032.) We read nothing in section 9.20 which requires all debts under the Collection Agency Act be commercial transactions.

As further support for its contention that municipal fines are not covered by the Collection Agency Act, Datacom points to section 2.03. We find that section 2.03 does not address the type of debt owed. Rather, it delineates the type of individual or entity excluded from the scope of the Collection Agency Act. We thus do not find section 2.03 dispositive of this issue.

Datacom makes an additional contention: if municipal fines are treated as debts, then these fines should be dischargeable in bankruptcy. Such fines, however, are not dischargeable under the Federal Bankruptcy Code. (11 U.S.C. §523(a)(7) (1985).) Datacom argues we cannot construe the Collection Agency Act in such a way that it would conflict with the Bankruptcy Code.

Datacom's reference to the Bankruptcy Code is irrelevant. While the Collection Agency Act concerns the unlawful collection practices of collection agencies, the Bankruptcy Code deals with the discharge of debts. Only statutes which are *in pari materia* should be construed together. (*Wallace*, 291 Ill. at 470.) "Statutes which relate to the same thing or to the same subject or object

are *in pari materia* \*\*\*." (*Wallace,* 291 Ill. at 470.) The Collection Agency Act and the Bankruptcy Code are not *in pari materia* and so should not be construed together.

Furthermore, the Bankruptcy Code provides that a discharge under its provisions does not discharge a debtor from any debt "to the extent *such debt is for a fine* \*\*\* payable to \*\*\* a governmental unit." (Emphasis added.) (11 U.S.C. §523(a)(7) (1985).) We interpret this to mean that even under the Bankruptcy Code, a municipal fine is one category of debt; such a fine is simply not dischargable as other debts are under the law.

Our decision that municipal fines are debts under the Collection Agency Act is bolstered by the current Illinois Vehicle Code (Ill. Rev. Stat. 1989, ch. 95½, par. 1—100 *et seq.*). Section 11—208.3 of the Vehicle Code, added in 1987, allows any municipality to provide by ordinance for a system of administrative adjudication of vehicular parking violations. (Ill. Rev. Stat. 1989, ch. 95½, par. 11—208.3(a).) Section 11—208.3 requires that any such ordinance must provide for, among other things, the service of a second notice of the violation to the vehicle owner. (Ill. Rev. Stat. 1989, ch. 95½, par. 11—208.3(b)(5)(i).) This notice must state that the failure to either pay the fine or appear at a hearing will result in a final determination of parking violation liability in the amount of the fine. (Ill. Rev. Stat. 1989, ch. 95½, par. 11—208.3(b)(5)(i).) This notice "shall state that the unpaid fine or penalty is a *debt due and owing the municipality.*" (Emphasis added.) Ill. Rev. Stat. 1989, ch. 95½, par. 11—208.3(b)(5)(ii).

The City and Datacom point out that since section 11—208.3 did not become effective until nine months after the circuit court entered its order, the appellate court wrongly applied this section of the Vehicle Code retroactively to the instant case. Furthermore, they contend

that the State and the Department waived any assertions they had regarding the applicability of the Vehicle Code. The State argues the appellate court correctly analyzed and applied section 11—208.3 to the case at bar. Even excluding an analysis of the Vehicle Code, we have found that fines are debts under the Collection Agency Act.

Regardless of the reasoning of the appellate court, we may affirm its judgment if that judgment is correct on other grounds. (*Carter v. Winter* (1965), 32 Ill. 2d 275, 284.) Because we would affirm the appellate court's decision on other grounds, we need not take up the issue of whether the appellate court correctly or incorrectly applied section 11—208.3 retroactively.

The City and Datacom next contend the common law does not support a holding that municipal fines are debts. However, in light of our holding, we will not address this argument.

This court also finds that the classification of ordinance violations affects the question of whether fines for ordinance violations, in this case parking violations, are considered debts for purposes of the Collection Agency Act. Actions to recover debts are generally civil proceedings. Consequently, the more a cause of action for an ordinance violation can be characterized as civil rather than criminal, the more a fine imposed for an ordinance violation appears to constitute a debt.

In support of their proposition that fines are not debts, the City and Datacom cite *City of Chicago v. Thomas* (1968), 102 Ill. App. 2d 143, and *Flynn v. City of Springfield* (1905), 120 Ill. App. 266.

The City and Datacom argue *Thomas* establishes the principle that fines for municipal ordinance violations are not debts. We do not read *Thomas* to stand for such a broad proposition. We conclude that the holding in *Thomas* only addresses the definitions of "indebtedness"

and "debtor" within the context of the Insolvent Debtors Act. The *Thomas* court specifically indicated it was reluctant to interpret these two terms differently because to do so would seriously frustrate the intent of section 2 of "An Act in relation to imprisonment for nonpayment of a fine imposed for violation of an ordinance ***" (Ill. Rev. Stat. 1965, ch. 75, par. 52). (*Thomas*, 102 Ill. App. 2d at 149.) Under that statute, a court could order the temporary imprisonment of a person for the nonpayment of a fine imposed for the violation of an ordinance. (*Thomas*, 102 Ill. App. 2d at 149.) The *Thomas* court was also reluctant to hold otherwise because such action could lead to inconsistent applications of the Insolvent Debtors Act—malicious tortfeasors could not avail themselves of the protection of the Act, while violators of municipal ordinances could find sanctuary within it. *Thomas*, 102 Ill. App. 2d at 150.

Regarding the *Flynn* case, this court finds that court addressed a different issue than the one before us. The *Flynn* court had to decide whether the circuit court erred in denying the corporate counsel's motion to dismiss when the city attorney objected to the motion. The issue revolved around whether the city council had the power to direct the city attorney's actions in the prosecution of ordinance violations. In resolving this issue, the *Flynn* court stressed the quasi-criminal aspect of ordinance cases, thus concluding that the city attorney, pursuant to his duty to protect the public, was not bound to follow the orders of the city council. (*Flynn*, 120 Ill. App. at 269-70.) We also point out the *Flynn* court acknowledged that "[b]y long established practice [penalties for ordinance violations] are recoverable by [an] action of debt." (*Flynn*, 120 Ill. App. at 269.) The City and Datacom also cite *Village of Park Forest v. Bragg* (1966), 74 Ill. App. 2d 87, and *People v. Dummer* (1916), 274 Ill. 637, but these cases are similarly distinguishable.

Other cases are more enlightening. The court in *City of Highland Park v. Curtis* (1967), 83 Ill. App. 2d 218, held that the prosecution and recovery of a fine for the violation of a municipal ordinance was to be tried and reviewed as a civil proceeding. Thus, the burden of proof required by the city to establish the violation was the clear preponderance of the evidence. *Curtis*, 83 Ill. App. 2d at 228.

This court and the appellate court have made similar observations in *City of Danville v. Hartshorn* (1973), 53 Ill. 2d 399, *City of Chicago v. Knobel* (1907), 232 Ill. 112, *Israel v. President & Trustees of the Town of Jacksonville* (1836), 2 Ill. 290, *Town of Normal v. Witham* (1968), 91 Ill. App. 2d 262, *City of Chicago v. Lewis* (1960), 28 Ill. App. 2d 189, *City of Chicago v. Streeter* (1910), 152 Ill. App. 463, and *City of Chicago v. Schreffler* (1912), 175 Ill. App. 547.

In light of those cases, we conclude that the recovery of a fine for an ordinance violation has been historically treated in Illinois as a civil action to recover a debt. We derive from these cases that Illinois courts viewed and characterized such fines as debts, hence correlating the two terms. When some Illinois courts, in cases like *Thomas* and *Flynn*, differed somewhat by indicating that a debtor-creditor relationship was not created by the imposition of a fine for an ordinance violation, such courts did so in order to prevent harm to a statute, a rule of law, or some public policy. In doing so, as we have seen, these courts often emphasized the quasi-criminal nature of ordinance violations. We do not find any reason not to continue to characterize and treat such fines as debts, at least for purposes of the Collection Agency Act. No harm would befall any statute, including the Collection Agency Act, any case, any public policy, or any other rule of law by our so holding. On the contrary, the purpose of the Collection Agency Act in protecting the pub-

lic from the abusive practices of collection agencies would be frustrated if we denied application of the Act to third parties who collected fines. Based on an analysis of the Collection Agency Act itself, we hold that fines for municipal parking violations are debts within the Collection Agency Act.

## C. Datacom as a Collection Agency

We further find the State's complaint alleged sufficient facts to establish that Datacom is a collection agency as defined by sections 2.02 and 3 of the Collection Agency Act. Section 2.02 provides that a collection agency is a corporation "who, for compensation, either contingent or otherwise, *** offers services to collect an alleged debt." (Ill. Rev. Stat. 1985, ch. 111, par. 2004.) Section 3 lists five acts which constitute a collection agency. (Ill. Rev. Stat. 1985, ch. 111, par. 2006.) A person or corporation "acts as a collection agency" when she, he, or it does any one of these five acts. (Ill. Rev. Stat. 1985, ch. 111, par. 2006.) The first of these acts includes "[e]ngag[ing] in the business of collection for others of any account, bill or other indebtedness." Ill. Rev. Stat. 1985, ch. 111, par. 2006(a).

As alleged in the State's complaint, Datacom is a New York corporation licensed to do business in Illinois. Datacom, in exchange for monetary compensation, provided services to the City to collect municipal fines. Datacom received up to 42% of the monies it collected on the parking tickets. We have already found that debts, as used in the Collection Agency Act, include municipal parking fines.

Datacom's contract with the City, which was attached to the State's complaint, repeatedly stated that Datacom would "collect delinquent tickets," perform "collection services," and perform "all services necessary to attempt to effect collection of delinquent parking ticket

fines, penalties and costs." In order to collect the fines owed on the tickets, Datacom agreed to undertake at least 16 different tasks which included: processing information on the tickets through its computer; verifying some of the information on the tickets; establishing an on-line cashiering capability for City agencies; developing an interface mechanism with the Secretary of State, the clerk of the circuit court, the court, and the City to coordinate the distribution of information with regard to the tickets; training City personnel in the use of the system and equipment; preparing and mailing one to three demand notices to the ticket holders; receiving and responding to all inquiries and correspondence; processing all payments received; and providing audit and deposit information on the payments received.

Datacom asserts it merely provided data processing services to the City, and its actions under the contract did not amount to debt collection activities. During oral argument, counsel for Datacom mentioned a provision in the contract which states that if a ticket remained unpaid for more than 60 days after the distribution of the final notice, the City could direct Datacom to refer the account to an attorney, collection agency, or other third party to institute litigation on the collection of the account. Datacom maintains this provision reveals it was not suppose to, and did not, perform all of the collection services, only the preparation and distribution of the notices. As to its application for, and receipt of, a collection agency license, Datacom alleges in its third-party complaint it disagreed with the Department's opinion that it needed a collection agency license, but acceded to the Department's licensing request in an effort to accommodate the Department.

We conclude Datacom's activities constituted more than just data processing services—these were full-scale collection actions. The contract provision Datacom men-

tions only indicates the City *could*, if it chose to, direct Datacom to transfer an account to a third-party to institute litigation; the City did not *have* to do so. In addition, just because the City could refer an account to another collection agency does not mean Datacom itself was not performing collection activities.

Datacom also held itself out as a collection agency. The complaint stated Datacom applied for and received a collection agency license from the State. The contract itself provided that Datacom would "comply" with all applicable State laws and regulations, "with specific reference to licensure requirements and debt collection activities." Datacom fought the Department's administrative complaint seeking to revoke its collection agency license. Contrary to Datacom's contention, it would not have undertaken these actions if it did not think it may have been performing collection services and, therefore, subject to the Collection Agency Act. For these reasons, we find the allegations in the complaint sufficient to establish, for the purpose of overcoming the City's and Datacom's motion to dismiss, that Datacom is a collection agency as defined by sections 2.02 and 3 of the Collection Agency Act.

### D. Public Officer Exception

The next issue is whether Datacom falls within the public officer exception of the Collection Agency Act (Ill. Rev. Stat. 1985, ch. 111, par. 2005(4)), and is therefore exempt from the strictures of the Act. The Collection Agency Act does not apply to "persons whose collection activities are confined to and are directly related to the operation of a business other than that of a collection agency," including "[p]ublic officers and judicial officers acting under order of a court." (Ill. Rev. Stat. 1985, ch. 111, par. 2005(4).) Datacom maintains it was simply a data processing contractor, printing and mailing demand

notices pursuant to the City's directives. According to Datacom, it was a mere arm of the City. Datacom attempts to persuade us that authorized contractors of a public or governmental entity also come within this exception.

We are not persuaded. As we stated earlier, Datacom did more than just provide data processing services to the City; it performed collection services. The State alleged in the complaint and the contract specifically stated that Datacom was an independent contractor, not an agent of, or joint venturer with, the City. Thus, Datacom's argument that it is simply an appendage of the City is contradicted by this part of the contract.

The Collection Agency Act does not specifically exempt collection agencies acting on behalf of public and judicial officers, and we refuse to read such a provision into the statute without some expression of legislative intent to do so. We agree with the State that if we adopted Datacom's analysis of the statute, we would create two classes of collection agencies, one which collects money for private entities and is subject to the Collection Agency Act, and one which collects money for governmental entities but is exempt from the Act. We decline to make this distinction absent legislative direction. Consequently, the public officer exemption of the Collection Agency Act provides an insufficient ground on which to dismiss the State's complaint.

### E. Waiver

Datacom lastly raises several waiver arguments. Datacom contends the State did not seek any relief under the Collection Agency Act in its complaint. Thus, Datacom asserts, any arguments regarding the Collection Agency Act raised by the State were waived. In count I of the complaint, the State alleged that Datacom, by engaging in certain conduct, violated various provisions of

the Collection Agency Act which also constituted viola-tions of the Consumer Fraud Act. The State only sought relief under the Consumer Fraud Act in count I. Because the State did allege violations of the Collection Agency Act in the complaint, the State did not waive any issues based upon that Act. The State simply alleged that the same acts which were violations of the Collection Agency Act were also violations of the Consumer Fraud Act.

Datacom also contends that violations of the Collection Agency Act do not constitute violations of the Consumer Fraud Act. The State did not argue or brief this issue before the circuit or appellate court, so it is waived, according to Datacom. The appellate court refused to address the question of whether a violation of the Collection Agency Act was a *per se* violation of the Consumer Fraud Act because the parties did not brief the issue. (176 Ill. App. 3d at 711.) Since we do not consider the issue waived because it was raised by the complaint, we decline to address this question, as it is unnecessary for purposes of determining the issue on appeal; that is, whether the complaint can withstand a motion to dismiss. This issue may be resolved by the circuit court upon remand. We also note that even absent the Collection Agency Act allegations, count I could still stand based on the Consumer Fraud Act allegations alone.

Datacom maintains the State has no standing to prosecute civil damage suits under the Collection Agency Act for the benefit of private parties such as those herein. We agree with Datacom that, at the time the State filed the complaint, only the Department had standing to pursue civil violations of the Collection Agency Act. (Ill. Rev. Stat. 1985, ch. 111, pars. 2035, 2036, 2037; see also Ill. Rev. Stat. 1989, ch. 111, par. 2039a.) Nevertheless, Datacom's allegation has no merit because, as we have indicated, the State is not seeking relief under the Col-

lection Agency Act. It is only seeking relief under the Consumer Fraud Act by alleging the same acts which violated the Collection Agency Act also constituted violations of the Consumer Fraud Act.

Datacom additionally asserts a waiver argument against the Department. The Department moved to dismiss Datacom's third-party complaint which sought to prohibit the Department from pursuing Datacom for violations of the Collection Agency Act. In its efforts, the Department, according to Datacom, did not argue before the circuit court that Datacom was subject to the Collection Agency Act because municipal fines are debts under the Act. Datacom claims that the Department, instead, only raised a jurisdictional argument which the circuit court rejected. The Department does not dispute these facts.

The appellate court *could* consider the Department's argument, even if the argument may have been waived. It is true that issues raised for the first time on appeal may not normally be considered by a reviewing court. (See *Moehle v. Chrysler Motors Corp.* (1982), 93 Ill. 2d 299, 303.) Exceptions to this rule, however, exist. If the question is one of law and is fully briefed and argued by the parties, a reviewing court may consider the merits of the question. (*Hux v. Raben* (1967), 38 Ill. 2d 223, 225.) We do not understand what prejudice Datacom endured inasmuch as it fully briefed and argued its side of the issue before the appellate court.

### F. Conclusion

Our decision here neither prevents the City from collecting the fines owed on these municipal parking tickets, nor forbids the City from hiring or contracting with an individual or corporation, like Datacom, to perform those collection duties. Nevertheless, such individuals and corporations, including Datacom, will have to abide

by the Collection Agency Act, as well as all other Illinois laws when carrying out their services. The issue before us is whether Datacom is subject to the Collection Agency Act, not whether Datacom did, as the complaint alleges, violate the Act.

The purpose of the Collection Agency Act is to protect Illinois residents from the abusive collection practices of collection agencies. While the City has an interest in collecting the monies owed it, the State likewise has an interest in protecting its citizens from the unscrupulous practices of collection agencies. We are mindful of the vast amount of money owed to the City on these fines, as well as the amount of money the City has collected thus far. We cannot, however, allow this factual circumstance to tie the hands of the law or deny a party its right to pursue an otherwise valid claim. Were we to hold differently, then any collection agency hired by any municipality could perform its activities unregulated and thereby possibly engage in activity which would be unlawful if the collection agency had been employed by a private corporation. A distinction based on for whom a collection agency works does not achieve the goals of the Collection Agency Act.

Based on the foregoing analysis, we conclude the State's complaint was sufficient to withstand a motion to dismiss. As we have indicated, Datacom filed a third-party complaint seeking declarative and injunctive relief for the Department's attempt to enforce the Collection Agency Act against Datacom. In its third-party complaint, Datacom raised substantially the same arguments addressed and rejected here. We, therefore, hold the circuit court erred in issuing the injunction against the Department and in not dismissing the third-party complaint.

### III. Consumer Fraud Act

In count I of the complaint, the State alleged Datacom violated section 2 of the Consumer Fraud Act (Ill. Rev. Stat. 1985, ch. 121½, par. 262) by engaging in unfair and deceptive acts and practices. Section 2 provides:

"Unfair methods of competition and unfair or deceptive acts or practices, including *** the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act', *** in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act." (Ill. Rev. Stat. 1985, ch. 121½, par. 262.)

"Trade" and "commerce" are defined as "the advertising, offering for sale, sale, or distribution of any services *** and shall include any trade or commerce directly or indirectly affecting the people of this State." Ill. Rev. Stat. 1985, ch. 121½, par. 261(f).

Datacom primarily contends the Consumer Fraud Act is inapplicable because the Act protects only consumers, the alleged parking violators are not consumers, and therefore the alleged parking violators do not have standing under the Act. Datacom cites section 1(e) (Ill. Rev. Stat. 1985, ch. 121½, par. 261(e)) and *Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320. However, we cannot accept such a restrictive construction of the Consumer Fraud Act. First, section 2 of the Consumer Fraud Act forbids unfair or deceptive practices and

states that such practices are unlawful when done in the course of any trade or commerce. The definition of "trade" and "commerce" in the Act includes the "distribution of *any* services \*\*\* *directly or indirectly affecting the people of this State.*" (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 121½, par. 261(f).) This section reveals legislative intent to extend the reach of the statute broadly. *Scott v. Association for Childbirth at Home, International* (1981), 88 Ill. 2d 279, 284; *People ex rel. Fahner v. Walsh* (1984), 122 Ill. App. 3d 481, 486.

We have already held that the State's complaint sufficiently alleged Datacom is a collection agency which sold and provided full collection services to the City. That holding supports our conclusion here. As a result of selling its collection services to the City, Datacom mailed several demand notices to, and collected money from, hundreds of thousands of people in this State. These actions constituted the sale and distribution of services which directly or indirectly affected the people of Illinois, namely the alleged parking violators, and thus amounted to the conduct of trade or commerce as defined by the Consumer Fraud Act. Our holding is not unique. See *State v. O'Neill Investigations, Inc.* (Alaska 1980), 609 P.2d 520, 528-30; *Pennsylvania Retailers' Associations, Reliable, Inc. v. Lazin* (1981), 57 Pa. Commw. 232, 241-42, 426 A.2d 712, 717-18.

Moreover, section 2 of the Consumer Fraud Act states that "[i]n construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act." (Ill. Rev. Stat. 1985, ch. 121½, par. 262.) Section 5(a) of the Federal Trade Commission Act prohibits "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices." (15 U.S.C. §45(a)(1) (1985).) The Federal courts have held that the "deceptive acts or

practices forbidden by the [Federal Trade Commission] Act include those used in the collection of debts." (*Trans World Accounts, Inc. v. Federal Trade Comm'n* (9th Cir. 1979), 594 F.2d 212, 214; see Commercial Practices, 16 C.F.R. §237 *et seq.* (1991); *O'Neill*, 609 P.2d at 529-30; *Pennsylvania Retailers'*, 57 Pa. Commw. at 242, 426 A.2d at 718; Note, *The Illinois Collection Agency Act*, 1975 U. Ill. L. Forum 441, 456.) Because the Consumer Fraud Act explicitly requires consideration of this Federal law in the construction of section 2, we find that debt collection practices are embraced by the Act. See *Illinois Collection Agency Act*, 1975 U. Ill. L. Forum at 456.

Once we find that the Consumer Fraud Act covers debt collection practices, we cannot then arbitrarily decide that only certain debts come within the scope of the Act. We agree with the appellate court that Datacom draws an invalid distinction between the collection of consumer debts, such as those arising from the purchase of goods for household use, and debts owed to a governmental entity, such as fines arising from the violation of parking ordinances. 176 Ill. App. 3d at 708.

Also, under section 7 of the Consumer Fraud Act, whenever a State's Attorney has reason to believe any person has engaged in a practice declared unlawful by section 2, and "proceedings would be in the public interest, he or she may bring an action in the name of the People of the State against such person ***." (Ill. Rev. Stat. 1985, ch. 121½, par. 267.) The State's Attorney is not limited regarding whose interests she or he may seek to protect. The State's Attorney may bring an action if she or he believes a person has performed an unfair or deceptive act in the conduct of trade or commerce, and she or he believes proceedings would be in the public interest.

Both of those requirements are fulfilled here. The State alleged in its complaint that Datacom violated section 2 of the Consumer Fraud Act. Considering the large number of alleged parking violators affected by Datacom's actions, clearly this proceeding is in the public interest. A person's status as a consumer relates to his or her standing to sue as an individual under the Consumer Fraud Act, but is irrelevant in a case, like the one at bar, which is brought by the State's Attorney. *Walsh*, 122 Ill. App. 3d at 485; *People ex rel. Fahner v. Hedrich* (1982), 108 Ill. App. 3d 83, 88; see *Scott*, 88 Ill. 2d at 285.

Datacom cites *Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, for support. However, this court in *Steinberg* simply held that applicants to a medical school are not consumers for purposes of the Act, and, as such, the facts of *Steinberg* are dissimilar. *Steinberg* did not address the State's Attorney's ability to enforce the Act (see *Scott*, 88 Ill. 2d at 285), which is the issue before us in the instant case.

Furthermore, the Consumer Fraud Act itself states it is to be "liberally construed to effect [its] purposes." (Ill. Rev. Stat. 1985, ch. 121½, par. 271a.) In line with this, the title of the Act indicates the Act is designed to protect not only consumers, but borrowers and businessmen as well. These provisions also supply proof that the legislature did not intend for the Consumer Fraud Act to be applied narrowly.

Datacom refers to *Chirikos v. Yellow Cab Co.* (1980), 87 Ill. App. 3d 569, for support that Datacom was not engaged in trade and commerce with respect to the alleged parking violators for purposes of the Consumer Fraud Act. *Chirikos* is factually different from the case at bar. In *Chirikos*, the alleged misrepresentations occurred between the defendant taxicab companies and the City, not between the defendants and plaintiff. The

*Chirikos* court determined that the actions between the City and the defendants were not practiced in trade or commerce. In the case at bar, the alleged violations of the Consumer Fraud Act occurred between the alleged parking violators, on whose behalf the State filed suit, and Datacom. The relationship between Datacom and the alleged parking violators *is* in trade and commerce, unlike the relationship between the City and the defendants in *Chirikos*.

Datacom asserts it comes under the governmental exception of the Consumer Fraud Act and cites section 10b(1) (Ill. Rev. Stat. 1985, ch. 121½, par. 270b). Datacom alleges it was working at the direction of the City and is thus exempt.

Datacom again cites *Chirikos* for support. Again, this court finds that *Chirikos* is easily distinguishable. *Chirikos* held the exemption applicable because the City, in the discharge of its lawful duties, had allegedly acted in reliance on misrepresentations made by private parties. In the case at bar, the State did not allege in its complaint that the City acted in reliance upon misrepresentations made by Datacom. Instead, the State contended that Datacom, in its dealings with the alleged parking violators, not the City, engaged in actions prohibited by the Consumer Fraud Act. The State also alleged Datacom undertook these actions as an independent contractor with the City. Datacom is not a governmental entity; it is a private corporation. Datacom's actions were not specifically authorized by any laws administered by a regulatory body acting under statutory authority of this State. Based on the allegations in the complaint, we find that section 10b(1) of the Consumer Fraud Act is not a sufficient basis on which to affirm dismissal of the State's complaint.

Datacom lastly argues its demand notices were not misleading as a matter of law for purposes of the Con-

sumer Fraud Act. The State disputes this claim. The appellate court held that "the factual allegations of the State's Attorney's complaint are sufficient to state claims that the notices sent by Datacom were misleading and thereby violated the acts ***." (176 Ill. App. 3d at 700-01.) The appellate court found the two cases Datacom relied upon to support its position that the notices were misleading (*Horn v. City of Chicago* (N.D. Ill. Dec. 29, 1986), No. 85—C—6838, mem. op. at 3, *rev'd on other grounds* (7th Cir. 1988), 860 F.2d 700; *Stelzik v. City of Chicago* (Cir. Ct. Cook Co.), No. 85—CH—7631) were inapposite to the case at bar. This court agrees.

The issue in *Horn* was whether the demand notices violated constitutional due process. *Horn* did not determine whether the demand notices violated provisions of the Consumer Fraud Act or any other State law. The demand notices could comply with due process, yet still violate the Consumer Fraud Act. Thus, we agree with the appellate court that *Horn* is inapplicable.

Like *Horn*, the court in *Stelzik* did not determine whether the demand notices violated the Consumer Fraud Act. Instead, the court only held that plaintiff should have challenged the demand notices in the original actions in traffic court. Because the issues raised in *Stelzik* and the case at bar were different, the result in *Stelzik* has no bearing on our decision here.

It must be remembered that the issue before us is whether the State's complaint is sufficient to state a claim upon which relief can be granted and thereby survive a motion to dismiss. The factual issues involved in this case—whether Datacom's various actions actually violated the Consumer Fraud Act—have not yet been addressed by the trier of fact. We are somewhat perplexed by the circuit court's finding that the notices were not misleading. In our view, whether or not Datacom, through its demand notices, violated the Consumer

Fraud Act or any other law is a factual issue which must be decided by the trier of fact once this cause is remanded. As a matter of law, for purposes of a motion to dismiss the action on the pleadings, we cannot say the notices were not misleading, or did not employ deception, fraud, false pretense, false promise, misrepresentation or the concealment or omission of a material fact in violation of the Consumer Fraud Act. We hold the State's complaint sufficiently alleged the notices were misleading and violated the Consumer Fraud Act.

## IV. Deceptive Trade Practices Act

The State specifically listed six acts in violation of the Deceptive Trade Practices Act.

Since Datacom advances the same arguments against the Deceptive Trade Practices Act as it did against the Consumer Fraud Act, we reject Datacom's arguments for those reasons set forth in part III of this opinion. We conclude the alleged parking violators are persons likely to be damaged by Datacom's purported deceptive trade practices. Contrary to Datacom's assertion, while the Deceptive Trade Practices Act has been generally applied to situations where one competitor may be harmed by the unfair trade practices of another, the Act has not been exclusively applied as such. (See *Hayna v. Arby's, Inc.* (1981), 99 Ill. App. 3d 700, 715; *Brooks v. Midas-International Corp.* (1977), 47 Ill. App. 3d 266, 275.) We agree with the appellate court that the State set forth sufficient facts in count II of its complaint to state a cause of action under the Deceptive Trade Practices Act and thereby withstand a motion to dismiss.

## V. *Quo Warranto*

Within the issue of *quo warranto*, this court finds three sub-issues which must be addressed individually. (Ill. Rev. Stat. 1985, ch. 110, par. 18—101.) It is well es-

tablished that a plaintiff in a *quo warranto* action is not required to allege any facts in the complaint showing the challenged acts are unlawful; it is enough to, in general terms, allege the defendant exercised the claimed rights without authority. (Ill. Rev. Stat. 1985, ch. 110, par. 18— 103; *People ex rel. Ray v. Lewistown Community High School District No. 241* (1944), 388 Ill. 78, 86.) Since the pleading requirements are extremely liberal under *quo warranto*, and the defendant bears the burden of proof, trial courts are compelled to exercise great care when dismissing such actions at the pleading stage.

Count III of the State's complaint alleged that Datacom, in excess of the power and authority granted to it, usurped its authority in four specific acts to be noted in the discussion. The State requested that Datacom be prohibited from exercising these powers and be fined for each act of usurpation.

Count IV of the complaint alleged that the City, in excess of its power, granted authority to Datacom to initiate and execute each of the four practices complained of in count III. In its prayer for relief, the State asked that the City show by what warrant the City granted such authority to Datacom. The State also asked that the City be prevented from abusing its authority and be ordered to pay a fine.

The first issue is whether the City and Datacom had the authority to increase the parking fines extrajudicially. The Chicago Municipal Code (the Code) sets forth the City's parking regulations. (See Chicago Municipal Code §27—305 *et seq.* (1985).) Generally, each section of the Code pertaining to parking regulations indicates a range of penalties to be imposed for a violation of that section. Those parking sections of the Code which do not provide for a range of penalties are governed by section 27—363 of the Code. (Chicago Municipal Code §27—363 (1985).) Section 27—363 provides for a penalty range of

between $15 and $200. It should also be noted that the penalty ranges have varied over the years. For example, prior to 1984, section 27—363 did not establish a minimum penalty. (Chicago Municipal Code §27—363 (1983).) The minimum penalty was therefore set at $3 by section 1—13 of the Code (Chicago Municipal Code §1—13 (1983)).

While the minimum and maximum fines for the violation of a parking ordinance are set by the Code, the exact fine is not established by the Code. Rather, Rule 11.2 of the Rules of the Circuit Court of Cook County states that "[t]he Chief Judge shall establish a schedule of penalties and procedures for violation of municipal parking ordinances." The chief judge of the circuit court of Cook County sets forth this schedule in Circuit Court General Order No. 7. It is substantially this schedule which is listed on an individual's parking ticket. (See generally *Horn v. City of Chicago*, 860 F.2d 700.) The ordinance violated by an individual is written on one side of the ticket, and the individual refers to the current schedule of fines listed on the reverse side of the ticket to determine the fine she or he must pay.

The State alleged in the complaint, and the City admitted in its brief, that $20 was demanded for each ticket in the first notices, even though each original ticket imposed a penalty of less than $20. The notice also demanded an extra $3 for a "court cost" or "mailing fee" which was not listed on the ticket. The fine per ticket was increased even further in the second and third demand notices. Moreover, the ticket was a complaint for the violation of a parking ordinance. The City did not amend this complaint to request the imposition of a fine higher than that stated on the original ticket.

The City challenges the State's and the appellate court's reliance on two municipal ordinances. The appellate court relied on sections 1—14 and 27—363 in finding

that the Code only afforded to a judge of the circuit court the power to impose a fine higher than that stated on a parking ticket. (176 Ill. App. 3d at 714.) Section 1—14 of the Code provides:

> "Whenever in this code a minimum but no maximum fine or penalty is imposed, the *court* may in its discretion fine the offender any sum of money exceeding the minimum fine or penalty so fixed, but not exceeding the sum of two hundred dollars." (Emphasis added.) (Chicago Municipal Code §1—14 (1985).)

Section 27—363 states:

> "Every person *convicted* of a violation of any of the provisions of this chapter for which no penalty is specifically provided shall be punished by a fine of not less than fifteen dollars nor more than two hundred dollars for each offense." (Emphasis added.) (Chicago Municipal Code §27—363 (1985).)

The City maintains that neither ordinance precludes it from making a pretrial demand for an amount in excess of the fine stated on the ticket.

Neither ordinance, however, *provides* the City with authority to increase parking fines without judicial intervention. Section 1—14 allows for an increase in fines at the court's discretion, not the City's. Section 27—363 addresses the imposition of a fine only after there has been a conviction. Clearly, a person cannot be convicted of an ordinance violation without judicial intervention. We also point out the schedule of fines itself is established by the court pursuant to Circuit Court Rule 11.2 and General Order 7. In addition, the only relief the City sought in the parking complaint—the original parking ticket—was the fine established by the schedule on the ticket. To seek additional or different relief, the City had to follow the procedures set forth in section 2—617 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—617) and Supreme Court Rule 105 (134 Ill. 2d R. 105) to

amend the complaint. Therefore, we find the City's authority to increase fines extrajudicially does not stem from either of the cited ordinances, nor do we find such authority granted by any other ordinance or statute. Accordingly, the State's complaint should not have been dismissed without further proof by the City and Datacom.

The City and Datacom assert several other arguments in support of their theory that they had the requisite authority to demand higher fines than those imposed at the time of the alleged parking violations. In light of this court need not address the remaining issues within this sub-issue.

The second issue under *quo warranto* is whether the City properly authorized Datacom to use the City's seal and title on the demand notices sent to the alleged parking violators. The State also questions Datacom's authority to use the seal and title, despite the City's alleged approval. As we stated earlier, the statutory pleading requirements are extremely liberal under *quo warranto*. Unlike most actions where the plaintiff bears the burden of proof, under *quo warranto* the defendants have the burden of justifying their acts. (*Lewistown*, 388 Ill. at 86.) To counter the State's allegations, the City and Datacom argue the City hired Datacom to perform only ministerial duties to collect the unpaid fines, and Datacom was authorized to use the City's seal and title.

We do not find this argument sufficient to warrant a motion to dismiss. First, in contrast to the assertions of the City and Datacom, the complaint alleged Datacom was a collection agency, providing a range of services to the City to collect the municipal parking fines. The complaint also alleged, and the contract specifically stated, that Datacom was acting as an independent contractor. Second, the State alleged in counts I and II that Datacom's use of the seal and title violated other Illinois

laws. According to the State, Datacom did not have the power to violate these laws, and the City could not, under any circumstances, authorize Datacom to do so. The City, on the other hand, maintains that Datacom complied with State law. The City also contends it did not authorize Datacom to violate any such laws because the contract provided that Datacom had to comply with all applicable State laws. Assuming the State's allegations in the complaint are true, the City and Datacom provide no legal basis to justify their acts sufficient to sustain their motion to dismiss. Any unresolved factual issues must be decided by the trier of fact upon remand.

The final issue under *quo warranto* is whether Datacom had the authority to deposit checks made payable to the clerk of the circuit court of Cook County into Datacom's accounts at Seaway National Bank. The appellate court held:

> "[N]either the City nor Datacom has offered any specific legal foundation to justify the negotiation of checks made payable to the clerk or the deposit of these funds into Datacom's account at Seaway National Bank." (176 Ill. App. 3d at 714.)

We agree with the appellate court's position.

The defenses the City and Datacom present are unpersuasive. Initially, the City and Datacom argue the issue is moot, since all of the funds in question were remitted to the clerk of the court in July 1985. Such an argument is outside the scope of *quo warranto*. To succeed against a claim under *quo warranto*, the defendant must allege and prove it had the authority to act as it did. A claim of mootness does not present justification for the acts of the City or Datacom regarding the deposit of the checks.

Furthermore, section 18—108 of the Code of Civil Procedure provides that when a court adjudges a person or corporation guilty in a *quo warranto* proceeding, the

court may enter a judgment of ouster against the person or corporation from the office or franchise, or fine the person or corporation in an amount not to exceed $25,000 for each offense. (Ill. Rev. Stat. 1985, ch. 110, par. 18—108.) While the circuit court in the case at bar may not need to oust or prevent the City and Datacom from further engaging in the act in question, the court, if it should adjudge them guilty, may still choose to punish them by imposing a fine. Therefore, we do not find the issue moot. See *People ex rel. Courtney v. Botts* (1941), 376 Ill. 476, 480-81; *cf. Department of Illinois Disabled American Veterans v. Bialczak* (1976), 38 Ill. App. 3d 848, 850 (*quo warranto* is an "extraordinary proceeding, prerogative in nature, addressed to preventing a continued exercise of authority unlawfully asserted").

The City contends it may accept directly, through Datacom, the payments made to satisfy the municipal ordinance violations because these payments ultimately belonged to the City. The State, however, alleges elsewhere in the complaint that Datacom's action violated other Illinois laws. If this proves to be true, a claim in *quo warranto* could be established because neither Datacom nor the City has the authority to circumvent State law. Resolution of the issue, therefore, must be left to the trier of fact.

Datacom also claims the State's Attorney of Cook County is estopped from challenging Datacom's authority to deposit the checks due to the State's Attorney's prior defense of the parking fine collection program in the *Stelzik* cause of action. In *Stelzik*, as well as in *Horn*, the State's Attorney represented the defendant, Cook County, in an action brought by individuals contesting the parking fine collection program at issue in the instant case.

The appellate court in the instant case stated:

"Datacom did not raise this contention in its motion to dismiss the complaint, nor did Datacom present a motion to disqualify the State's Attorney on the basis of an alleged conflict of interest. Since the trial court made no ruling either with respect to the State's Attorney's disqualification, or on whether the State's Attorney is laboring under a conflict of interest, the question is not properly presented for review, and we do not consider the issue here. Also, in none of the cases cited by Datacom was a State's Attorney's conflict of interest deemed sufficient basis to dismiss the cause with prejudice, as was done by the trial court in the case at bar. Consequently, we find Datacom's argument in this regard an inadequate basis to affirm the trial court's ruling in the instant case." (176 Ill. App. 3d at 712.)

We adhere to the appellate court's conclusion.

We additionally note that Datacom's only cited support before us for its estoppel argument, *People ex rel. Livers v. Hanson* (1919), 290 Ill. 370, is factually inapposite to the case at bar. In *Hanson*, this court held that a State's Attorney who advised and directed all the proceedings for the organization of a school district was disqualified to file an information in the nature of *quo warranto* questioning the organization of the school district. (*Hanson*, 290 Ill. at 371-73.) In the case at bar, the State's Attorney did not direct or organize the parking fine collection program. Furthermore, the State's Attorney did not represent or counsel either the City or Datacom in *Stelzik* or *Horn*. Thus, Datacom's estoppel argument also lacks sufficiency to sustain a motion to dismiss.

The City and Datacom raise other arguments. However, in light of the findings of this court, we will not address these contentions.

Last of all, as we have pointed out, the State has alleged elsewhere in the complaint that Datacom violated the Collection Agency Act, the Consumer Fraud Act,

and the Deceptive Trade Practices Act by engaging in each of the four acts in question. Certainly a corporation committing illegal acts is exceeding its authority and exercising powers not conferred on it by law, thereby prompting a *quo warranto* proceeding. (See *People v. White Circle League of America* (1951), 408 Ill. 564.) Similarly, the State claims the City authorized Datacom to engage in these four acts. The City has no power to permit a corporation to violate the law. Consequently, a proceeding in *quo warranto* also could properly be brought against the City for exercising power not conferred on it by law. (See *People ex rel. Gage v. Village of Wilmette* (1940), 375 Ill. 420, 424.) Assuming the facts alleged are true, as we must on a motion to dismiss, the State adequately stated facts upon which relief could be granted in *quo warranto.*

## VI. Conclusion

Consequently, we hold that the State's complaint was sufficient to state a claim upon which relief could be granted. The circuit court erred in allowing the City's and Datacom's motion to dismiss the complaint. For the same reasons, we hold the circuit court also erred in imposing the injunction against the Department, and in denying the Department's motion to dismiss Datacom's third-party complaint. We therefore affirm the judgment of the appellate court, reversing the judgment of the circuit court and remanding for further proceedings.

*Affirmed.*

JUSTICES BILANDIC, HEIPLE and FREEMAN took no part in the consideration or decision of this case.