In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-2402

GREGORY E. RAHN, *et al.*,

*Plaintiffs-Appellants*,

*v.*

BOARD OF TRUSTEES OF NORTHERN
ILLINOIS UNIVERSITY, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:09-cv-03033 — **Frederick J. Kapala**, *Judge.*

ARGUED APRIL 13, 2015 — DECIDED SEPTEMBER 23, 2015

Before WOOD, *Chief Judge*, and ROVNER, *Circuit Judge*, and
SPRINGMANN, *District Judge.*[*]

ROVNER, *Circuit Judge.* Gregory Rahn ("Rahn") and
Genemetrix, a company in which Rahn and his wife Regina

---

[*] Hon. Theresa L. Springmann of the Northern District of Indiana, sitting
by designation.

Rahn (hereinafter referred to simply as Regina in order to avoid confusion with her husband) are principals, filed a complaint in the district court against the Northern Illinois University Board of Trustees ("NIU") and individual Northern Illinois University officers Promod Vohra, Omar Ghrayeb, Bradley Bond, and Raymon Alden III, alleging discrimination and retaliation in violation of Title VII, copyright infringement and violations of due process. The district court dismissed the due process claims with prejudice, and that decision is not challenged in this appeal. The district court granted summary judgment in favor of the defendants on the racial discrimination, retaliation, and copyright infringement claims, and the plaintiffs now appeal those decisions. Because the claims are factually distinct, with no real overlap, we will address the facts underlying the claims separately. We review the district court's summary judgment decision in favor of the defendants *de novo*, considering the facts in the light most favorable to the plaintiffs. *Seiser v. City of Chicago*, 762 F.3d 647, 653 (7th Cir. 2014).

## I.

We begin with the facts underlying the claim of racial discrimination and retaliation. Rahn, who is white, alleged that the defendants engaged in reverse discrimination in violation of Title VII of the Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq., when they failed to hire him for a tenure-track assistant professor position at the university based on his race.

Rahn, who earned a PhD in Industrial Engineering from the University of Illinois, was hired as a visiting professor at NIU

for the 2006-2007 school year. His wife Regina was hired as a tenure-track assistant professor in the Department of Industrial and Systems Engineering ("ISYE") of the College of Engineering and Engineering Technology ("College of Engineering") for that same school year. During that year, a tenure-track assistant professor position opened up in that Department, and Rahn applied for that position. A search committee was entrusted with evaluating the applicants for the position. Regina was a member of that committee along with Dr. Richard Marcellus, Dr. Reinaldo Moraga, Dr. Murali Krishnamurthi and Michelle Coovert, who was a student working as a teaching assistant for Rahn. Eighty-two applicants applied for that position, and on March 5, 2007, the committee met to consider the applicants. At that meeting, they voted as to the qualifications of the applicants in an effort to winnow the applicants down to a group that would proceed to the phone interview stage.

Despite her husband's status as one of the applicants, Regina remained on the search committee and participated in the voting at that meeting. Rahn received three votes at that meeting—from his wife Regina, his teaching assistant Coovert, and Moraga—which was sufficient to place him in the top ten of applicants although he was not the highest vote-getter. A number of other candidates received three votes as well, one candidate received five votes, and the person ultimately hired for the position, Dr. Gary Chen, received four votes at that meeting.

Within days of that meeting, on March 9, 2007, Promod Vohra, the dean of the College of Engineering, convened an emergency meeting to inform the committee that Regina was

being removed from it based on the conflict of interest as the wife of one of the applicants. That decision was consistent with NIU Board of Trustees policy that provides that "[f]aculty and administrative employees are selected for employment without regard to relationship by blood or marriage" and that "no individual shall initiate or participate in personnel decisions involving initial employment, retention, promotion ... or other direct benefit to an individual employee who is a member of the same immediate family or immediate household [including] an employee's spouse ... ." Dist. Ct. Doc. 163-16, PageID 1182. Although Rahn contends that the policy applies only to the Board of Trustees, the language including faculty and administrative employees belies such an interpretation, and in any case he fails to provide any support for that contention.

Coovert testified that at that emergency meeting, Vohra was upset that Regina had been on the committee voting on the potential candidates including her husband, and questioned committee member Moraga as to why he voted for Rahn. Coovert also testified that Vohra stated that he would not hire a white man into the department if qualified minority candidates were available. Regina stated that she was listening outside the door of the meeting, and similarly heard those statements from Vohra, whereas Ghrayeb, Vohra and Moraga testified that no such statements were made. For purposes of summary judgment, however, we must take the testimony in the light most favorable to Rahn.

In an effort to provide a more transparent process, Krishnamurthi developed an evaluation metric to provide a structure for comparing the candidates. That metric set forth categories which corresponded with the requirements set forth in the job

description, allowing the committee members to numerically rank each candidate in the individual categories. Once those scores were tallied, the resulting composite score would facilitate comparison of candidates. The search committee was given the opportunity to provide feedback as to the proposed metric, and once finalized the metric was used in the evaluation of the candidates by the committee.

Rahn argues that the metric was designed to eliminate him from consideration, and asserts that Coovert testified to that effect. Coovert's testimony, however, does not support that argument. Coovert initially stated that she believed the metric was designed to eliminate Rahn, but upon further questioning she clarified that she thought the metric valued academic experience such as publishing over industry experience, and would therefore favor those with that academic background. She stated that as a student she valued the industry experience that her professors such as Rahn brought to the classroom. That testimony does not support the argument that the metric was a subterfuge for eliminating Rahn on racial grounds. A university employer may properly preference academic experience, and Rahn has not even presented any evidence that such a preference was inconsistent with the initial description of the position and the preferred qualifications. Moreover, Coovert did not claim to have any personal knowledge as to the purpose or procedure of the creation of the metric, and there was no evidence at all that Krishnamurthi or the other members of the search committee harbored any discriminatory intent. Rahn also failed to produce any evidence that Vohra had any role in the creation of the metric. In fact, the defendants contend that the metric merely tracked the qualifications

set forth in the position description, and Rahn does not argue otherwise.

Rahn did not make the eventual cut of candidates, and did not proceed to the telephone stage of the process. Regina therefore was allowed to rejoin the committee and she participated in the interviews and the vote on the final candidates. The committee then forwarded the proposed final candidates to Vohra, and he made the ultimate hiring decision to choose Chen, who was not a white male.

Rahn subsequently filed a grievance contesting the decision to hire Chen over him. NIU denied the grievance, and Rahn pursued an EEOC complaint and then filed this suit alleging race and gender discrimination, which he ultimately pared down to simply a claim of race discrimination. He alleges that under either the direct or indirect method of establishing discrimination, he should survive summary judgment.

To prevail under the direct method, a plaintiff must produce "either direct or circumstantial evidence that would permit a jury to infer that discrimination motivated an adverse employment action." *Langenbach v. Wal-Mart Stores, Inc.*, 761 F.3d 792, 802 (7th Cir. 2014). Direct evidence is evidence of discriminatory intent without resort to inference, such as an admission of discriminatory intent often referred to as "smoking gun" evidence. *Ripberger v. Corizon*, 773 F.3d 871, 877 (7th Cir. 2014); *Hutt v. AbbVie Products, LLC*, 757 F.3d 687, 691 (7th Cir. 2014). Here, there is no such direct evidence. Rahn submits that the statement by Vohra regarding hiring a qualified minority candidate over a white one is dispositive direct evidence that he was not hired because of his race.

Vohra, however, did not make the decision to eliminate Rahn from consideration. The search committee, applying the factors deemed relevant to the job, eliminated him from consideration. Vohra chose between the two candidates submitted to him by the committee, but Rahn was not in that pairing. Accordingly, the statement by Vohra is not evidence "without resort to inference" that the hiring decision was based on his race.

Moreover, even viewed as circumstantial evidence that discrimination motivated the decision, it is insufficient to survive summary judgment. "Circumstantial evidence can take a number of forms, such as suspicious timing, behavior or comments directed at members of the protected group, evidence showing that similarly-situated employees outside the protected group received systematically better treatment, and evidence that the reason the employer gave for the adverse action was pretextual." *Langenbach*, 761 F.3d at 803. Rahn does not allege any comments by the decision-makers directed at white candidates, and although he argues that the committee was influenced by Vohra's comment, he fails to cite to any evidence in the record to support that argument. Nor is there evidence that the reason given for the hiring decision was pretextual. Even before the alleged statement by Vohra which Rahn believes tainted the process, Chen received more votes than Rahn by the committee; and at that point, the committee also included his wife Regina. There is, in short, no evidence in the record at all that contradicts the claim by NIU that Chen was more qualified for the position than Rahn, and that he was hired for that non-discriminatory reason. In addition to a dearth of any evidence that the search committee members were impacted by Vohra's views in selecting candidates to be

sent to him, Rahn has not contested that the candidates were sorted by applying the criteria of the metric, and as discussed above he has failed to argue that the metric did not accurately reflect the legitimate qualifications of the position and was therefore a pretextual reason for the hiring determination.

Nor has he argued that the selection of Chen was not based on that metric, or that it otherwise established that the reason given was pretextual. In fact, the district court noted that Rahn failed to address the defendants' contention that Chen was hired based on the determination that he was more qualified. Although Rahn devoted significant time in the district court on wide-ranging allegations unrelated to his discrimination claim, including allegations that Vohra had committed perjury and questions as to actions taken by the university with respect to grading issues, Rahn did not even mention the name "Chen" in his brief and never addressed the defendants' argument that Chen was chosen because he was more qualified. In fact, although Rahn testified that he was "by far the most qualified candidate," he acknowledged that he was unaware of the qualifications of Chen or the other candidates. The defendants noted in the reply brief that Rahn had therefore waived the argument, and Rahn then attempted to file a sur-reply without first seeking the permission of the district court. The district court ultimately rejected the sur-reply, but the court noted that even in the sur-reply, Rahn did not address the argument that Chen was chosen because he was more qualified than Rahn. The district court granted summary judgment in favor of the defendants, holding that Rahn had failed to contest the defendants' claim that it had a non-pretextual reason for hiring Chen that was unrelated to race. On appeal, Rahn does not address

that waiver argument, and therefore cannot assert here that the committee's determination that Chen was more qualified was a pretext. That dooms his claim under the indirect method as well, because even if Rahn was able to establish a prima facie case of discrimination under that method, he could not survive summary judgment; the defendants set forth a legitimate reason for choosing Chen based on the metric evaluation of his qualifications, and Rahn has waived any argument that the reason is pretextual. See *Matthews v. Waukesha County*, 759 F.3d 821, 826-27 (7th Cir. 2014).

In addition to the discrimination claim, Rahn also asserted that NIU retaliated against him for filing his grievance by having the NIU police force harass him and by failing to properly investigate the grievance. The district court held that the retaliation claim was waived because Rahn failed to address NIU's arguments as to that claim aside from two sentences at the end of Rahn's response which lacked any legal support. On appeal, Rahn does not even address the waiver holding, and therefore has alleged no basis to reverse the district court on that ground. See *Ripberger*, 773 F.3d at 879 (perfunctory and undeveloped arguments are waived).

## II.

We turn then to the copyright claims. Rahn asserts two distinct claims of copyright infringement on appeal. The first involves the use of a course note packet for a course in the Department of Industrial and Systems Engineering (ISYE) of the College of Engineering at NIU, the ISYE 100 course entitled "Essentials of Manufacturing." While employed as a full-time tenured professor at NIU, Regina developed the ISYE 100

course notes, and those notes were utilized by a different professor, Joe Bittorf, in teaching the course. Although Regina initially granted him permission to use the ISYE 100 course notes, in the Spring semester of 2007 she informed Bittorf that she no longer wanted him to use the course notes. Nevertheless, the ISYE 100 course notes were used in the course through the Spring semester of 2009. In addition to informing Bittorf that he could no longer use the course notes, Regina had also informed defendant Alden, the NIU Provost, by email in January 2008, that NIU no longer had permission to use the ISYE 100 course notes. The parties debate whether Regina's brief two-sentence statement in a four-page single-spaced email to Alden was sufficient notice to NIU that it could no longer use the ISYE 100 course notes, or whether NIU rather than Regina was the real owner of any interest in the ISYE 100 course notes because they were developed in the scope of Regina's employment, but we need not address those issues. The copyright claim fails for a more fundamental reason, which is that the evidence establishes only that Regina Rahn was the author of the ISYE 100 course notes, but Regina is not a plaintiff in this case. According to appellants' brief, Regina was initially a plaintiff, but the district court severed her from the suit pursuant to Federal Rule of Civil Procedure 21. The plaintiffs here allege that the ISYE 100 course notes were written by Gregory and Regina Rahn as principals of Genemetrix, and assert that the University violated copyright law in continuing to distribute the ISYE 100 course notes after permission to do so was rescinded. The district court rejected that argument and held that the record indicated that Regina was the sole author of the ISYE 100 course notes. On appeal,

Rahn argues only that the district court ventured beyond the arguments for summary judgment and in doing so failed to consider the entire record. We reject this argument. The district court's determination was responsive to the defendants' argument on summary judgment that Regina was the sole author of the ISYE 100 course notes and that they were prepared as part of her employment. Moreover, that holding by the district court is consistent with the record.

At the outset, it is important to identify the three documents that are referenced in this claim. The copyrighted work at the cornerstone of the claim is entitled Trifinity Six Sigma Series TXu001018550 ("Six Sigma Series.") There is no dispute that the document was authored by Gregory and Regina Rahn who are principals in Genemetrix, and that Genemetrix owns a valid copyright in that work. A second work entitled "Essentials for Manufacturing Systems" was purportedly created after the Six Sigma Series by Gregory and Regina Rahn for consulting purposes, and is a derivative work. The relationship between the ISYE 100 course notes and the Essentials for Manufacturing Systems, however, is unnecessarily muddled. The district court characterized the ISYE 100 course notes as a derivative of the Essentials for Manufacturing Solutions, which was itself a derivative of the Six Sigma Series, and held that because Regina created the ISYE 100 course packet with authority from Genemetrix, she became the owner to the copyright to that class note packet, citing *Schrock v. Learning Curve Int'l Inc.*, 586 F.3d 513, 524 (7th Cir. 2009) (the right to claim copyright in a derivative work arises by operation of law but may be altered by agreement). On appeal, Rahn treats the two derivative works as the same document but does not

identify them as such. In fact, he identifies no evidence in the record that would let us conclude that the ISYE 100 course notes are in fact simply a copy of the Essentials for Manufacturing Systems document, and other evidence in the record indicates at least some of the ISYE 100 course notes such as student exercises were not part of the Essentials for Manufacturing Systems work. In addressing the district court's characterization of the ISYE 100 course notes as a "second derivative," (a derivative of the Essentials for Manufacturing Systems which was itself a derivative of the copyrighted work), the plaintiffs merely state that the existence of a second derivative is "not substantiated" but is irrelevant because the page of the notes contained a copyright mark with a Genemetrix logo. Given the centrality of those documents to the claim and to the district court's resolution, it is incomprehensible that at this stage of the litigation there is any doubt as to the exact composition of the documents. Even on appeal, the plaintiffs to their detriment fail to clarify the matter, and more importantly fail to point to any evidence in the record that does so.

First, the plaintiffs have failed to identify evidence in the record which would demonstrate that they authored the ISYE 100 course notes. In the fact section of the brief, the plaintiffs initially provide no cite at all for the statement that "[t]he notes were created by Greg and Gina as principals of GMX [Genemetrix]." In a later similar statement, they cite to documents that do not in fact contain evidence sufficient to raise a genuine issue of fact as to that issue. First, they cite to the cover pages for ISYE 100 course notes labeled Essentials for Manufacturing Book 1, Book 2, and Book 3, but no authorship is indicated. That is followed by three pages that appear identical

to each other labeled Essentials for Manufacturing Systems, each of which provides that it is written by Gregory Rahn and Regina Rahn and contains a Genemetrix copyright. There is no context provided for those pages, and the exhibit does not contain the course notes themselves. Moreover, those appear to be the cover pages for the Essentials for Manufacturing System derivative work, which, as we discussed, appears to be distinct from the ISYE 100 course notes. At oral argument, neither party could even point us to the place in the record where we could find the ISYE 100 course notes that were the basis of the claim. In response to our request for supplemental briefing, the defendants stated that they were unable to find the course notes in the record, and that only the cover pages for the three volumes of the course notes were provided in the record. The exhibit identified by the defendants in fact contains only the cover pages. The plaintiffs then informed us that the ISYE 100 course notes can be found in three different exhibits taken together. Those exhibits contain a document entitled Essentials for Manufacturing Systems but nowhere does it identify it as the ISYE 100 course notes. The record does not appear to contain both the full ISYE 100 course notes and the Essentials for Manufacturing Systems document which would allow comparison, and the plaintiffs have not alleged that the two are identical. The failure of the plaintiffs to clarify the differences, if any, between those documents is significant given the district court's opinion that clearly considered the documents to be distinct. Even if the citation provided by the plaintiffs are to the ISYE 100 course notes with the cover pages missing, that document still does not provide us with the complete ISYE 100 course notes because the plaintiffs concede

that some pages of the document are missing from the record. The failure to clearly identify documents in the record, and to provide supporting citations for material propositions of fact, is a recurrent problem in this case. At a minimum, in seeking copyright protection, the plaintiffs must clearly identify the work at issue. The plaintiffs have failed to do so here. That alone could warrant summary judgment, but at a minimum the failure to identify the relevant documents in the record precludes an argument of authorship or copyright that is based on isolated pages of those incomplete documents. Therefore, the pages identifying Essentials for Manufacturing Systems as authored by Greg and Regina Rahn and copyrighted by Genemetrix are insufficient evidence as to the authors and copyright owners of the ISYE 100 course notes.

The only other citation that indicates Rahn as a joint author with Regina are emails sent by Regina to the bookstore after the conflict with NIU over the notes had already ensued, in which she asks how many copies have been sold and refers to the course notes as notes authored by Rahn and herself. The plaintiffs cite to no deposition or affidavit testimony from Regina indicating that Rahn co-authored the course notes, and therefore has failed to produce admissible evidence to that effect. The plaintiffs do provide two record citations for the statement that in 2005 or 2006, "Greg and Gina allowed GMX [Genemetrix] professional development materials to be used in the academic curriculum at NIU for the ... ISYE 100 course," but upon examination those cites also fail to support that proposition. The first cite is a statement in the affidavit by Regina Rahn, stating that documents from Genemetrix were used in the preparation of the course notes. That statement

makes no mention as to whether copyrighted material was used, and also fails to identify Rahn as involved in the authoring or preparation of the notes. The other cite provided for the factual proposition is even less helpful. That citation is to a letter from the Interim Department Chair of the Industrial Engineering Department to Pat Foster of the University Bookstore, stating that Regina Rahn, as the author of the course notes, is entitled to receive any royalties from the sale of the notes. Once again, that fails to demonstrate any connection between the plaintiffs and the notes, nor does it indicate that copyrighted materials were used. In his deposition, Donald Turk, the Manager of the University Bookstore, testified that royalties were paid for work authored by the professors for both copyrighted and uncopyrighted materials. Moreover, by identifying Regina Rahn as the author of the notes, without reference to Gregory Rahn or Genemetrix, the letter in fact disputes the proposition that the plaintiffs were authors of the notes. Although Regina Rahn as author of the course notes may have an interest in preventing the unauthorized distribution of her course notes, she is not a plaintiff in this case. Gregory Rahn and Genemetrix have failed to demonstrate any such interest.

Nor have they presented evidence that Regina Rahn authored the course notes in her capacity as principal of Genemetrix. First, the course notes were prepared for classroom use, and the preparation of such materials was a part of the duties of professors. Significantly, in providing the course notes to the bookstore to be copied and sold, Regina Rahn affirmatively represented that she was the sole author and that the course notes contained no copyrighted materials. In the

form submitted with the notes, Regina Rahn signed a declaration which provided "I, Regina Rahn, affirm that the materials I am submitting to be copied and sold for my class are entirely my own original work and I have not included any copyrighted material." Regina acknowledged in her deposition that the signature and representation was indeed hers. The plaintiffs have failed to point to evidence in the record rebutting that representation by Regina. If there is evidence in the record establishing that plaintiffs have a protectible interest in the ISYE 100 course notes and that the district court erred in determining otherwise, they have failed to identify it. As we have oft-stated, "we will not root through the hundreds of documents and thousands of pages that make up the record here to make [plaintiff's] case for him." *Corley v. Rosewood Care Ctr., Inc. of Peoria*, 388 F.3d 990, 1001 (7th Cir. 2004); *Friend v. Valley View Community Unit School Dist. 365U*, 789 F.3d 707, 710-11 (7th Cir. 2015); *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) (Judges are not like pigs, hunting for truffles buried in the briefs."). The evidence in the record identified in the briefs is that Regina Rahn, not the plaintiffs, authored the ISYE 100 course notes, and she represented to the bookstore that it contained no copyrighted materials. She is neither a plaintiff nor a defendant in this case, and the record fails to otherwise establish a basis for this copyright claim. Accordingly, the district court properly granted summary judgment on this claim.

One copyright claim remains. Rahn alleges that the defendants copied Rahn's "Risk Management" power point presentation that he prepared in order to conduct a seminar for Exelon engineers, which was derived from plaintiffs' Six Sigma

Series. We take our facts largely from the succinct factual summary set forth by the district court. In the fall of 2006, Kathleen Thigpen, the senior training specialist at Exelon, contacted NIU and informed Cassandra Simmons, the outreach coordinator for the College of Engineering, that Exelon was interested in having an NIU professor provide training for Exelon employees on risk management. That request arose out of a relationship that spanned several years prior to the 2006 request, whereby Exelon would provide NIU faculty and students with industry experience in return for training and other support from NIU. NIU and Exelon agreed in late 2006 and early 2007 that NIU would furnish the risk management course by its employee and that Exelon would pay NIU, and Rahn was chosen to develop and teach that course. Rahn subsequently developed a power point presentation for that course using materials previously developed by Regina which Rahn considers derivative of Genemetrix's copyrighted materials. Exelon sought to review the materials before agreeing to the contract, and Rahn forwarded the presentation to Thigpen and Yousef Alaeddin, an engineer with Exelon. They determined that the presentation was inadequate for their needs, finding that the 144 slides lacked any prominent discussion of risk management. Thigpen also expressed his dissatisfaction that Rahn included the Genemetrix logo on the slides given that Exelon had requested that NIU provide one of its professors to give the presentation. Thigpen therefore informed Simmons that they did not want Rahn to teach the risk management course.

Simmons then asked Rahn's direct supervisor, Ghrayeb, to review the presentation and he agreed with Exelon that risk

management was not a significant part of the presentation. In addition, the dean of the College of Engineering, Vohra, also reviewed the presentation. The Exelon course ultimately was taught by another NIU professor, Dennis Cesarotti.

Rahn asserts that the defendants ' use of his power point presentation constituted a copyright violation. It is impossible to discern the basis for this claim, however, because the plaintiffs fail to cite to a single case in presenting this argument. The only legal citations in this portion of the argument relate to the sections concerning the proper weight that the district court should have given to certain affidavits in considering his copyright claim. As to the legal basis for the copyright claim itself, the plaintiffs neither identify the relevant copyright law nor do they identify the aspects of the law that the defendants allegedly violated. Instead, they devote the entirety of this argument to speculative assertions that Rahn's forwarding of the power point presentation was somehow coerced, or that the power point was distributed to competitors within NIU. The district court properly rejected those assertions as unsupported in the record, but more fundamentally, the plaintiffs have waived any claim as to the Exelon power point because they have failed to cite any legal authority in support of their argument. See *Ball v. City of Indianapolis*, 760 F.3d 636, 645 (7th Cir. 2014) (plaintiff who devoted no more than three sentences to her argument without citation to legal authority failed to comply with Fed. R. App. P. 28(a)(8)(A) and has waived the claim); *Yasinskyy v. Holder*, 724 F.3d 983, 989 (7th Cir. 2013) ("[w]e will not entertain baseless and unsupported factual contentions or undeveloped legal arguments"); *United States v. Lanzotti*, 205 F.3d 951, 957 (7th Cir. 2000) ("perfunctory and

undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived"); Federal Rule of Appellate Procedure 28(a)(8)(A).

The decision of the district court is AFFIRMED.