# Illinois Official Reports

## Appellate Court

---

### *People ex rel. Rahn v. Vohra*, 2017 IL App (2d) 160953

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS *ex rel.* GREGORY RAHN, Plaintiff-Appellant, v. PROMOD VOHRA, Defendant-Appellee. |
| District & No. | Second District<br>Docket No. 2-16-0953 |
| Filed<br>Rehearing denied | September 29, 2017<br>October 18, 2017 |
| Decision Under Review | Appeal from the Circuit Court of De Kalb County, No. 16-MR-59; the Hon. Bradley J. Waller, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Gregory Rahn, of Sugar Grove, appellant *pro se*.<br><br>Lisa Madigan, Attorney General, of Chicago (David L. Franklin, Solicitor General, and Mary C. LaBrec, Assistant Attorney General, of counsel), for appellee. |
| Panel | JUSTICE JORGENSEN delivered the judgment of the court, with opinion.<br>Justices McLaren and Zenoff concurred in the judgment and opinion. |

**OPINION**

¶ 1    Relator Gregory Rahn appeals a judgment dismissing his *pro se* complaint in *quo warranto* (see 735 ILCS 5/18-101 *et seq.* (West 2016)) against defendant, Promod Vohra. Rahn contends that the court erred in holding that the action became moot when defendant resigned from the position from which Rahn sought his ouster. Defendant responds that the case "may be moot," but he urges affirmance on various other grounds, including that Rahn lacked standing. We agree with Rahn that the case is not moot, but we agree with defendant that Rahn lacked standing. Therefore, we affirm.

¶ 2    On March 1, 2016, Rahn applied for leave to file his complaint, alleging as follows. Defendant was dean of the College of Engineering and Engineering Technology (College) of Northern Illinois University (NIU). Rahn was a former visiting professor at the College. Since 2009, he had litigated federal claims against defendant and NIU based on discrimination, retaliation, and copyright infringement. An action in *quo warranto* was proper under sections 18-101(1) and (3) of the Code of Civil Procedure (Code), which apply when "[a]ny person usurps, intrudes into, or unlawfully holds or executes any office, or franchise, or any office in any corporation created by authority of this State" (735 ILCS 5/18-101(1) (West 2016)) and when "[a]ny public officer has done, or allowed any act which by the provisions of law, works a forfeiture of his or her office" (735 ILCS 5/18-101(3) (West 2016)). Rahn could bring the action as relator because the Illinois Attorney General and the De Kalb County State's Attorney had both declined to file a *quo warranto* action against defendant (see 735 ILCS 5/18-103 (West 2016)).

¶ 3    Rahn alleged further as follows. On June 16, 2005, the NIU Board of Trustees (Board) appointed defendant dean of the College. However, he did not possess the minimum qualifications for the position, as (1) he lacked a B.S. degree, (2) his M.A. thesis was plagiarized and NIU leaked the names of whistleblowers, including Rahn, who were then harassed by the NIU police, and (3) he lacked the required doctorate in engineering or technology. Defendant was appointed only because the then-provost lowered the requirements and two ineligible people served on the search committee. Later, one of them was rewarded for his role in the scheme with a pay raise and a promotion.

¶ 4    Rahn alleged further that, since becoming dean, defendant had forfeited his position by allowing his daughter to graduate without fulfilling the requirements, by covering up his plagiarism, and by using the NIU police to intimidate whistleblowers.

¶ 5    On March 1, 2016, the trial court allowed Rahn to file his complaint in *quo warranto*. On April 14, 2016, defendant, represented by the Attorney General, filed an "Appearance and 12[-]Man Jury Demand" and an objection to Rahn's application for leave.

¶ 6    The objection argued as follows. First, a private party has no absolute right to file a complaint in *quo warranto* but must establish standing, which requires alleging a personal interest, distinct from that of the general public, that is directly, substantially, and adversely affected by the action that he seeks to challenge. See *People ex rel. Turner v. Lewis*, 104 Ill. App. 3d 75, 77 (1982). Here, defendant argued, Rahn had alleged no facts to establish standing. He no longer worked for NIU. His federal suit against defendant and NIU did not provide the required personal interest; the district court had granted summary judgment against him on all claims and the appellate court had affirmed, holding in part that defendant had not been responsible for his failure to obtain a tenure-track position. See *Rahn v. Board of Trustees of*

*Northern Illinois University*, 803 F.3d 285 (7th Cir. 2015). The Supreme Court had denied *certiorari. Rahn v. Board of Trustees of Northern Illinois University*, 578 U.S. ___, 136 S. Ct. 1685 (2016).

¶ 7    Second, Rahn had delayed unreasonably. Although defendant had been appointed dean in 2005 and Rahn had filed a grievance against him in 2007, raising some of the allegations that he now made, he had waited almost a decade to seek redress by *quo warranto*.

¶ 8    Rahn filed a reply. He argued that his interest in pursuing relief was distinct from that of the general public because (1) his suits against defendant had alleged actual damages unique to him, (2) he had alleged that defendant had committed wrongs against him specifically, and (3) the required personal interest need not be restricted to current or ongoing harm, although he had alleged such harm in the continuing effects of defendant's misconduct. Also, Rahn argued, there is no statute of limitations for a *quo warranto* action for ouster.

¶ 9    Defendant filed a surresponse. He argued that Rahn had cited no authority holding either that merely filing a lawsuit confers standing or that past harm creates the distinct personal interest needed for a *quo warranto* action. Moreover, even could Rahn show that his damages were connected to defendant's position as dean of the College, that would not suffice; he was required to allege a "professional relationship with [defendant's] deanship," such as being a faculty or Board member. Also, defendant argued, Rahn had failed to support any contention that nine years was a reasonable period to wait before seeking relief.

¶ 10   Rahn responded that defendant's objection had been untimely as it was filed more than 30 days after he was served with process. Also, he argued, by allowing him to file the complaint, the court had already found that he had standing. Finally, he had not delayed unreasonably by seeking relief through standard grievance procedures at NIU.

¶ 11   On July 22, 2016, defendant moved to dismiss the complaint (see 735 ILCS 5/2-619(a) (West 2016)). The motion contended first that the case was moot because, on June 30, 2016, defendant had resigned as dean of the College. Thus, the court could not oust him as Rahn had requested. Second, the complaint was barred by *res judicata* as it was based on the same core of operative facts as the federal suit, which had gone to a final judgment against Rahn.

¶ 12   Rahn responded first that *res judicata* did not apply because the prior federal litigation was not based on defendant's illegal usurpation of his office, his manipulation of the investigation into his appointment, or the academic fraud involving his daughter. Moreover, by allowing him to file the action, the trial court had already rejected the *res judicata* argument.

¶ 13   Rahn contended second that, for several reasons, defendant's resignation did not make the case moot. First, under section 18-108 of the Code, ouster was not the sole remedy:

> "Judgment. The court shall determine and adjudge the rights of all parties to the proceeding. In case any person or corporation against whom such complaint is filed is adjudged guilty as charged in the complaint, the court may enter judgment of ouster against such person or corporation from the office or franchise, and fine such person or corporation, and also enter judgment in favor of the relator for the cost of the prosecution. Instead of entering judgment of ouster from a franchise for an abuse thereof, the court may fine the person or corporation found guilty in any sum not exceeding $25,000 for each offense." 735 ILCS 5/18-108 (West 2016).

Rahn argued that he had identified numerous offenses that would each warrant defendant forfeiting his office. These offenses also subjected defendant to substantial fines, whether or not his term of office had expired, so the case was not moot.

¶ 14     Second, Rahn argued, without a finding of guilt, defendant could return to his office later. Third, he maintained that a judgment that defendant had occupied his office illegally would invalidate the contracts that he had signed under his ostensible authority as dean. That in turn would affect the rights that Rahn had sought to vindicate in the federal litigation and would provide relief to others who had been harmed by defendant's illegal acts.

¶ 15     Defendant filed a reply. He argued first that the action was barred by *res judicata* because his allegations of wrongdoing could have been included in the federal litigation. He argued second that the case was moot and that Rahn could not rely on speculation that his litigation would help him or others.

¶ 16     In a surresponse, Rahn contended that *res judicata* did not apply because the present claims were different from those in the federal suit and because the allegations supporting his claim that defendant was ineligible for the position of dean were not involved in the federal case.

¶ 17     The trial court held a hearing on defendant's motion to dismiss. The court asked Rahn what remedy it could provide were he to prevail on his complaint; defendant was already out of office, and Rahn could pursue claims for personal damages in other proceedings—but not in this one. Rahn responded that the court could still fine defendant and that ouster would invalidate the contracts that he had signed as dean. The court held that the case was moot and dismissed the complaint without prejudice.

¶ 18     Rahn moved to reconsider. At the hearing on his motion, he argued that case law, including *People ex rel. Courtney v. Botts*, 376 Ill. 476 (1941), and *People ex rel. Ballard v. Niekamp*, 2011 IL App (4th) 100796, dictated that defendant's resignation did not make the case moot because the court could still fine him for his wrongful acts. The court asked Rahn, "So let's assume that I adjudge him to be guilty of what you're alleging. Where does that leave you if I have the discretion to not award fines and costs and he's already out of office?" Rahn asserted that finding guilt would be "critical for me *** for a next lawsuit." He also noted that both parties had requested a jury trial. The court noted that the statute gave only defendant, and not Rahn, the right to a jury trial.

¶ 19     The discussion returned to mootness. The court suggested that the statute provided for a fine "in lieu of having the person or the corporation or whatever removed from office." As to ouster and a fine, the court had "the discretion to do one or both of those. Or, excuse me, one or the other." The court denied Rahn's motion and made the dismissal one with prejudice. Rahn timely appealed.

¶ 20     On appeal, Rahn contends primarily that the trial court erred in holding that defendant's resignation made the case moot. Rahn's exposition is somewhat diffuse, but we discern the following grounds: (1) under *Botts* and succeeding supreme court authority, the court could still fine defendant; (2) an action in *quo warranto* is a criminal proceeding, so defendant could not avoid the prosecution by resigning; (3) section 18-108's plain language—"[t]he court *shall* determine and adjudge the rights of all parties to the proceeding" (emphasis added) (735 ILCS 5/18-108 (West 2016))—required the court to decide the merits of the complaint; (4) a finding that defendant had committed the alleged acts would enable Rahn to obtain damages in a separate action by invalidating contracts that defendant signed as dean of the College; and

- 4 -

(5) under the "voluntary cessation" doctrine, defendant failed to show that misconduct would not continue despite his resignation.

¶ 21   We agree with Rahn's first ground. We do note, however, that all of the other grounds appear to be unsound. First, in contending that a *quo warranto* action is a criminal prosecution, Rahn relies primarily on (1) the use of the word "guilty" in the statute (see *id.*) and (2) *dictum* in *People v. Gartenstein*, 248 Ill. 546, 551 (1911), that *quo warranto* in Illinois retained some of the "ancient writ['s]" character as a "criminal method of prosecution" in that "the proceedings [were] in the name of the People and criminal *in form.*" (Emphasis added.) As a matter of common sense, neither (1) nor (2) is persuasive. (Rahn also cites some foreign authority that is neither binding nor pertinent.)

¶ 22   In any event, from at least 1879 on, our supreme court has stated that a proceeding in *quo warranto* is not a criminal prosecution. In *People ex rel. Bardill v. Holtz*, 92 Ill. 426 (1879), *overruled in part on other grounds by People ex rel. Weber v. City of Spring Valley*, 129 Ill. 169, 180 (1889), the court held that the appeal from a judgment in *quo warranto* should have been filed in the appellate court, not the supreme court. This was in part because this was "not a criminal case" (*Holtz*, 92 Ill. at 428) and "not being criminal [or otherwise appealable directly to the supreme court], should have been taken to the Appellate Court" (*id.* at 429). In 1907, the court explained that, although *quo warranto* was originally "criminal in character" under a 1710 statute of Anne (Assise of Fuel Act 1710, 9 Ann. c. 20 (Eng.)), the Illinois statute made it "a civil remedy when used for the protection of private rights." *People ex rel. Raster v. Healy*, 230 Ill. 280, 287 (1907). In 1919, the court again described a *quo warranto* action as "a civil remedy to call upon the defendant to show by what warrant the exercise of the franchise or privilege is claimed." *People ex rel. Moltz v. Barber*, 289 Ill. 556, 559 (1919). Consistently with *Holtz*, *Healy*, and *Moltz*, in *People v. United Medical Service, Inc.*, 362 Ill. 442, 453 (1936), the court stated that, unlike "the ancient writ," *quo warranto* "is [now] a civil remedy." See also *People v. White Circle League of America*, 408 Ill. 564, 568 (1951) (in *quo warranto*, "[t]he remedy is *** civil rather than criminal in character").

¶ 23   Second, Rahn's contention that *Botts* and other opinions support his construction of section 18-108 is incorrect: as we shall note, these opinions relied on other reasoning.

¶ 24   Third, we cannot agree with Rahn that proceeding to a final judgment on the merits will enable him to obtain damages in a separate action by invalidating contracts that defendant executed on behalf of NIU. Aside from the fact that the result of Rahn's federal action makes further pursuit of his claims barred by *res judicata* (see generally *Hudson v. City of Chicago*, 228 Ill. 2d 462, 467 (2008)), Rahn overlooks that the contracts would not be invalidated. Even had defendant occupied the position of dean illegally, his official actions would not be repealed as he was still a *de facto* officer. See *Arnold v. Mt. Carmel Public Utility*, 369 Ill. App. 3d 1029, 1034 (2006). Although no Illinois case appears to be directly on point, foreign jurisdictions have applied that doctrine in *quo warranto* proceedings, holding that, even if an officer or entity acted without legal authority, the acts that resulted from the exercise of *de facto* authority must stand. See, *e.g.*, *Long v. Stemm*, 7 N.E.2d 188, 192 (Ind. 1937); *State ex rel. Attorney General v. Mayor, Etc., of Town of Dover*, 41 A. 98, 99 (N.J. 1898); *Joyce v. Town of Taintor*, 2000 WI App 15, ¶¶ 5-13, 232 Wis. 2d 349, 606 N.W.2d 284; see also *Lueck v. Teuton*, 219 P.3d 895, 902 n.3 (Nev. 2009).

¶ 25   Fourth, we agree with defendant that the voluntary-cessation doctrine (see, *e.g.*, *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 189 (2000)) does

not apply to whether a proceeding in *quo warranto* is moot because the primary remedy, ouster, is no longer available. Defendant correctly notes that the cases that Rahn cites involve suits for declaratory and injunctive relief against continuing conduct by the same defendant.

¶ 26    Finally, insofar as Rahn raises other arguments against mootness (aside from the one that we address below), these arguments are also without merit.

¶ 27    We return to Rahn's first point under *Botts*. Whether a case is moot presents a question of law, which we review *de novo*. *In re James W.*, 2014 IL 114483, ¶ 18. Rahn contends broadly that, under *Botts*, section 18-108 requires the trial court to continue the cause to a final judgment even if no relief is available. He contends more narrowly that, under *Botts* and succeeding authority, the case is not moot because, although defendant can no longer be ousted from his office, the trial court can still fine him for the acts alleged in the complaint and award Rahn costs.

¶ 28    Defendant does not unequivocally disagree: instead, he states that "[w]hether this action is moot is not clear from the case law." He concedes that both *Botts* and *People ex rel. Daley v. Datacom Systems Corp.*, 146 Ill. 2d 1 (1991), hold that a *quo warranto* action for ouster is not rendered moot by the resignation of the defendant or the expiration of his term in office, as long as the trial court can still impose a fine. However, he contends that both holdings are inconsistent with the intervening opinion in *People ex rel. Black v. Dukes*, 96 Ill. 2d 273 (1983). Defendant notes that *Dukes* does not cite *Botts* and that *Datacom Systems* does not cite *Dukes*. He also notes that, in *Niekamp*, the appellate court followed *Botts* while expressing doubt that the supreme court would still do so itself. *Niekamp*, 2011 IL App (4th) 100796, ¶ 16. Defendant laments, "These cases cannot be reconciled."

¶ 29    We agree with Rahn's narrower argument on the construction of section 18-108 in light of *Botts* and *Daley*. We disagree with defendant that the authorities are irreconcilable.

¶ 30    We start with *Botts*. There, the State's Attorney sought to oust Botts as director, secretary, and second vice-president of a corporation, claiming that the board of directors had improperly overridden the December 1938 shareholders' vote in favor of his rival, Deering. The defendants admitted the material allegations of the complaint. On December 11, 1939, the trial court dismissed the complaint. On December 20, 1939, the shareholders duly elected Botts. He moved to dismiss the appeal as moot. The supreme court refused to dismiss the case. Because the interpretation of its reasoning is at issue here (and has been at issue in other cases), we quote it at some length:

> "Ordinarily when a reviewing court has notice of facts which show that only moot questions or abstract propositions are involved it will dismiss the appeal, and will not review the cause merely to decide such questions. [Citations.] The authorities sustaining this proposition have not been applied in *quo warranto* proceedings where the term of office of the contesting party has expired. *** Section 6 [of the statute (Ill. Rev. Stat. 1939, ch. 112, ¶ 14)] provides: 'The court shall determine and adjudge the rights of all parties to the proceeding. In case any person or corporation against whom such complaint is filed is adjudged guilty as charged in the complaint the court may give judgment of ouster against such person or corporation from the office, or franchise, and fine such person or corporation, and also give judgment in favor of the relator for the cost of the prosecution,' etc.
>
> The Illinois statute is modeled on the statute of Anne relating to *quo warranto* (9 Anne, chap. 20,) which was enacted for the purpose of rendering proceedings in the

nature of *quo warranto* more speedy and effectual. It has been held that under that statute, and the statutes of other States containing a provision for a fine, the case does not become moot although the usurpation was not continued to the date of trial. [Citations.]

There are cases holding that the plaintiff or relator in a *quo warranto* proceeding may prosecute the case to a final judgment, notwithstanding the expiration of the term of office before the case is finally adjudicated. [Citations.]" *Botts*, 376 Ill. at 479-80.

The court quoted *Gartenstein*: *quo warranto* proceedings " 'are in the name of the People and criminal in form for the double purpose of punishing the usurper and ousting him from the enjoyment of the franchise.' " *Id.* at 481 (quoting *Gartenstein*, 248 Ill. at 551). It concluded that, because section 6 provided for both ouster and a fine, "[t]he expiration of the office might terminate the private right of the plaintiff, but it would not terminate the jurisdiction of the court to adjudge punishment for the violation of the law." *Id.*

¶ 31 We agree with Rahn that *Botts* held, quite straightforwardly, that because the predecessor to section 18-108 (not materially different in substance) authorized both ouster and punishment, the fact that a defendant no longer occupied the office would not make the case moot.[1] We cannot agree with the trial court's suggestion that ouster and a fine are mutually exclusive, as that reading is not supported by the statutory language.

¶ 32 Defendant does not contest this reading of *Botts*, but he urges that the supreme court departed from *Botts*, at least temporarily, in *Dukes*. There, the State's Attorney alleged that the defendant was violating the law by simultaneously serving on the village board of trustees and the village school board and that, having been on the village board when he was elected to the school board, he effectively resigned from the former at that time. The complaint sought to oust him from the village board but no other relief. *Dukes*, 96 Ill. 2d at 275. In 1981, the trial court ruled for the State's Attorney. In 1982, the defendant resigned from the village board. *Id.* at 276. The next day, the appellate court reversed the judgment. The State's Attorney appealed to the supreme court but filed no further briefs and did not appear for oral argument. *Id.* at 275.

¶ 33 The supreme court dismissed the appeal as moot and vacated the judgments of the trial and appellate courts. *Id.* at 278. It reasoned that, because the defendant had resigned from the office from which the State's Attorney had sought his ouster, there was no longer a controversy for which a court could have provided a remedy. *Id.* at 276. The court would not decide the appeal merely to provide an advisory opinion. *Id.* at 276-77. *Dukes* did not mention *Botts*.

---

[1]We do not decide Rahn's argument that, by using the word "shall," section 18-108 was intended to prevent trial courts from ever dismissing *quo warranto* actions as moot. However, we do not read *Botts*'s quotation of similar language from section 18-108's predecessor as implying such a conclusion. Moreover, statutes should be construed so as to avoid absurdity, inconvenience, or injustice. *DeLuna v. Burciaga*, 223 Ill. 2d 49, 60 (2006). As a general rule, Illinois courts do not render advisory opinions. *In re Alfred H.H.*, 233 Ill. 2d 345, 351 (2009). Plaintiff's interpretation would require us to assume that the legislature intended to except *quo warranto* proceedings from this salutary rule, regardless of the waste of time and judicial resources. It would also imply that, by requiring trial courts to decide moot cases, the legislature intended to require the appellate court to render advisory opinions on appeals in these cases. Also, we note that the appellate court has affirmed at least one judgment dismissing a *quo warranto* action as moot. *People ex rel. O'Malley v. Village of Ford Heights*, 261 Ill. App. 3d 571, 575 (1994). To the extent that case authority suggests that *quo warranto* might be exempt from standard mootness doctrine, we note that in the main body of this opinion.

¶ 34	In *Datacom Systems*, the State's Attorney filed a four-count complaint, including a count in *quo warranto*, against the City of Chicago (City) and a private debt-collection agency (Datacom) that had contracted with the City to collect monies due on delinquent parking tickets. *Datacom Systems*, 146 Ill. 2d at 9. The *quo warranto* count asked the trial court both to enjoin Datacom from exercising powers that it had allegedly usurped and to fine it for each act of usurpation. *Id.* at 36. The third allegation in the *quo warranto* count was that Datacom had exceeded its authority by depositing checks payable to the circuit clerk into its own corporate bank account. *Id.* at 40.

¶ 35	The trial court dismissed the entire complaint as failing to state a cause of action. *Id.* at 10. Before the supreme court, the City and Datacom argued that the third allegation was moot because, in the interim, all the checks at issue had been remitted to the circuit clerk. *Id.* at 40. The court disagreed:

> "Such an argument is outside the scope of *quo warranto*. To succeed against a claim under *quo warranto*, the defendant must allege and prove it had the authority to act as it did. A claim of mootness does not present justification for the acts of the City or Datacom regarding the deposit of the checks.
>
> Furthermore, section 18-108 *** provides that when a court adjudges a person or corporation guilty in a *quo warranto* proceeding, the court may enter a judgment of ouster against the person or corporation from the office or franchise, or fine the person or corporation in an amount not to exceed $25,000 for each offense. [Citation.] While the circuit court in the case at bar may not need to oust or prevent the City and Datacom from further engaging in the act in question, the court, if it should adjudge them guilty, may still choose to punish them by imposing a fine. Therefore, we do not find the issue moot. See [*Botts*, 376 Ill. at 480-81]; *cf. Department of Illinois Disabled American Veterans v. Bialczak*, [38 Ill. App. 3d 848, 850 (1976)] (*quo warranto* is an 'extraordinary proceeding, prerogative in nature, addressed to preventing a continued exercise of authority unlawfully asserted')." *Id.* at 40-41.

¶ 36	Finally, the appellate court has weighed in. In *Niekamp*, the relators obtained a judgment ousting the defendant from a school board, based on his having violated a statute by serving on that board and the county board at the same time even though he had resigned from the county board shortly thereafter. He appealed. In the meantime, he was duly elected to the school board. The relators moved to dismiss the appeal as moot. *Niekamp*, 2011 IL App (4th) 100796, ¶ 14.

¶ 37	The appellate court denied the motion. It held that it was bound by *Botts*, while expressing doubt that the supreme court would adhere to that opinion. *Id.* ¶ 16. The court held that, under *Botts*, the ouster still left a justiciable issue: whether the defendant should also be punished for serving on the two boards at the same time. While acknowledging that the matter "appear[ed] minor and insignificant," the court concluded that, because the defendant was still subject to punishment, the case was not moot. *Id.* ¶ 19. The court went on to affirm the judgment. *Niekamp* is consistent with *Datacom Systems* but does not cite that opinion, relying on *Botts*.

¶ 38    From the foregoing discussion, we hold that the authorities support Rahn. This appeal is not moot merely because defendant has resigned as dean as, if Rahn can establish any of his allegations of wrongdoing, the trial court can still punish defendant under section 18-108.[2]

¶ 39    Defendant contends that *Dukes* cannot be reconciled with either *Botts* or *Datacom Systems* because it held that the ouster in that case made the case moot. We think, however, that there is a logical reconciliation. In *Dukes*, the complaint sought only the ouster of the defendant from the village board but *no other relief*. The plaintiff thus having forgone any request for punishment, the defendant's resignation left no controversy pending. In *Botts* and *Datacom Systems*, by contrast, the plaintiffs prayed for fines as well as ouster. Thus, the opinions appear to be compatible. (Of course, it might have been helpful had *Dukes* explained why it was consistent with *Botts* and had *Datacom Systems* explained why it was consistent with *Dukes*.)

¶ 40    To the extent that *Dukes* cannot be reconciled with either *Botts* or *Datacom Systems*, we take *Datacom Systems*, the last of the supreme court's three pronouncements on mootness in *quo warranto* proceedings, as the controlling authority. This does raise an issue as to the scope of the court's holding. While there is no doubt that the court echoed *Botts*'s holding that a *quo warranto* proceeding does not become moot if the possibility of punishment remains even after ouster becomes impossible, it appears to have gone much further.

¶ 41    Before endorsing *Botts*'s reasoning, the *Datacom Systems* court stated sweepingly that a mootness argument "is outside the scope of *quo warranto*." *Datacom Systems*, 146 Ill. 2d at 40. The court based its statement on the *quo warranto* statute's allocation of the burden of proof to the defendant, and not on *Botts*. By then using "[f]urthermore" to introduce its endorsement of *Botts*'s rationale (*id.*), the court made that rationale nonexclusive. Thus, besides reiterating that the possibility of punishment defeated the mootness argument in that case, the court apparently held that, even without that possibility, the case would not have been moot—and that no other *quo warranto* case would be moot merely because neither form of relief that the statute provided was still available. If this is what the court meant, it is hard to reconcile its opinion with *Dukes*, or even *Botts*.

¶ 42    We need not decide this conundrum now. The narrower reading of supreme court precedent disposes of the mootness argument. Because section 18-108 provides for both ouster and punishment, the unavailability of only the first of these remedies does not make the case moot. Thus, the judgment cannot be upheld on that ground. Whether the case would be moot even without the availability of either remedy is not before us.

¶ 43    We hold that the trial court erred in determining that this case is moot. That does not end our review, however. The judgment can be affirmed on any basis that the record calls for, even if the court did not rely on that basis. See *Rodriguez v. Sheriff's Merit Comm'n of Kane County*, 218 Ill. 2d 342, 357 (2006). In the trial court, defendant argued that the complaint should be dismissed (or barred in the first instance) because Rahn lacked standing. We agree.

¶ 44    To have standing to file a *quo warranto* action, a private party must allege that he has an interest in the matter distinct from the interests of the general public. *People ex rel. Miller v. Fullenwider*, 329 Ill. 65, 70-71 (1928); *Moltz*, 289 Ill. at 559. This private interest must be

---

[2]Rahn reads the trial judge's remarks during the hearings on defendant's motion to dismiss as showing that he had already decided that, even should Rahn prevail in the "guilt" phase of the action, he would not punish defendant. We do not read the judge's comments as showing such a prejudgment or predisposition.

directly, substantially, and adversely affected by the challenged action, and the damage to the private interest must be then occurring or certain to occur. *People ex rel. Wofford v. Brown*, 2017 IL App (1st) 161118, ¶ 14; *Turner*, 104 Ill. App. 3d at 77.

¶ 45    The long-standing rule in Illinois was that, to have standing to challenge the defendant's right to occupy an office, a private party must have an interest "*in the office itself.*" (Emphasis added.) *People ex rel. Hiller v. Bevirt*, 297 Ill. App. 335, 341 (1938). Thus, in *Miller*, the supreme court held that the relator lacked standing to seek a writ of *mandamus* to compel the Attorney General to file a *quo warranto* action to oust the current governor from office. (The case preceded the 1937 statutory change that enabled a private party to file a *quo warranto* complaint directly with leave of court. See *id.* at 339.) The court explained that the relator's interest was not "a direct interest in the subject matter of the litigation—the office of Governor—but *** only an interest in the official acts which the incumbent of the office may do," such as influencing taxes and appropriations. *Miller*, 329 Ill. at 74. The court relied on the history of the *quo warranto* proceeding in Illinois and elsewhere, noting the prevalent rule that the interest of a relator who seeks to oust an officer must be one in the office itself, peculiar to the relator. *Id.* at 72-73 (citing *Newman v. United States ex rel. Frizzell*, 238 U.S. 537, 550 (1915), *Commonwealth ex rel. McLaughlin v. Cluley*, 56 Pa. 270 (1867), and *State ex rel. Depue v. Matthews*, 29 S.E. 994 (W. Va. 1898).[3]

¶ 46    In *Hiller*, the relators, the town clerk of Caseyville Township and a justice of the peace who served on the town's board of auditors, alleged that the defendant had usurped the office of township supervisor and had committed various misdeeds sufficient to forfeit his title to the office. *Hiller*, 297 Ill. App. at 337. They also alleged that the defendant's misfeasance had prevented them from performing their official duties. Neither claimed any right to the office of township supervisor. *Id.* at 338. The appellate court affirmed the trial court's denial of leave to file an action in *quo warranto*. *Id.* at 341. The court reasoned that the relators' interest in having the office of supervisor filled by one who had met the legal prerequisites and would perform his official duties was the same interest as that of every citizen and resident of the township and thus insufficient to give them standing. *Id.* at 340-41. Moreover, their interest in being able to perform their duties was insufficient as it was not an interest in the office itself. *Id.* at 341.

¶ 47    The rules for standing have been liberalized somewhat since *Hiller*. In *Niekamp*, the trial court ousted the defendant from a school board on which two of the relators also sat. The court found that the defendant had violated a statute by serving on the school board and the county board at the same time. The appellate court affirmed, holding that the two fellow school-board members had standing because their interest in the matter was distinct from that of the general public. The appellate court explained that, as members of the same governmental body, on which one vote could decide important questions, the fellow board members had a distinctive interest in having only properly elected officers transact the business of that body. *Niekamp*, 2011 IL App (4th) 100796, ¶ 28; see *State ex rel. Morrison v. Freeland*, 81 S.E.2d 685, 687-88 (W. Va. 1954), *overruled on other grounds by Marra v. Zink*, 256 S.E.2d 581, 586 (W. Va. 1979).

---

[3]See also *Toncray v. Budge*, 95 P. 26, 33-34 (Idaho 1908); *Hovanec v. Diaz*, 397 N.E.2d 1249, 1250 (Ind. 1979); *Jackson v. Freeman*, 905 P.2d 217, 219 (Okla. 1995).

¶ 48 In *Wofford*, the relators were a private citizen and two City of Harvey aldermen who sought to remove the defendant alderman from the city council on the ground that he was ineligible for the office because he had been twice convicted of a felony. *Wofford*, 2014 IL App (1st) 161118, ¶¶ 3, 7. The trial court dismissed the complaint, holding that the relators lacked standing. *Id.* ¶ 9. One alderman-relator appealed. The appellate court reversed and remanded. Citing *Niekamp* and *Morrison*, it reasoned that, because the city council had only seven members, the vote of one member was significant. Thus, as another member of the city council, the alderman had a distinctive interest, not shared by the general public, in ensuring that the legislative process was not tainted by the participation of one who was not eligible to hold the office. *Id.* ¶ 23.

¶ 49 Although *Niekamp* and *Wofford* have broadened the former rule that a person seeking to use *quo warranto* to oust an officeholder must have an interest in the office itself, they have not expanded the law of standing nearly far enough to rescue Rahn's cause. Rahn has never asserted any claim to defendant's office (the College deanship) itself. Under the traditional rule of *Miller* and *Hiller*, his lack of standing would be inarguable. But even under *Niekamp* and *Wofford*, he has not alleged (much less documented) a distinctive personal interest sufficient to give him standing. Rahn does not and cannot allege that his situation, even before he left the employ of NIU, was analogous to those of the relators in *Niekamp* and *Wofford*. They were the fellow officers of the respective defendants, belonging to the same governmental bodies and participating in the same legislative processes. Even less after his departure from NIU can Rahn fit his situation into *Niekamp* and *Wofford*. His federal action against defendant, even was it a live controversy instead of having been terminated wholly in defendant's favor, would not approach the criteria of these authorities. No other facts that Rahn has alleged in his complaint or afterward would even arguably give him standing to bring this *quo warranto* action.

¶ 50 We hold that, although the trial court erred in concluding that this case is moot, dismissal was required on the basis that Rahn lacked standing. Therefore, the judgment of the circuit court of De Kalb County is affirmed.

¶ 51 Affirmed.